**ISHMAIL M. ALI, Plaintiff**

v.

**DAILY NEWS PUBLISHING CO., INC., ARIEL MELCHOIR, JR., and PATRICIA BLAKE, Defendants**

Civil No. 79-355

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 1, 1982

ISHMAIL M. ALI, Marion, Illinois, *pro se*

JOHN G. SHORT, ESQ. (DUDLEY, DUDLEY & TOPPER), St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

This pro se libel action arises out of a news article published by the defendant Daily News Publishing Co. on November 3, 1979. The case is now before the Court on the motion of defendants for summary judgment. Fed. R. Civ. P. 56(c).

### I. *The Facts*

The news story which forms the basis of this action was published on the front page of the Virgin Islands Daily News under a five-column (full page) headline which read "Fort Fire Triggers Protest." The story which was reported and written by defendant Blake, gave an account of a disturbance and fire which had occurred the previous day at the Fort Christian jail in Charlotte Amalie. The incident was apparently provoked after four inmates were about to be transferred from Fort Christian to the Golden Grove facility on St. Croix. The focus of the story as reflected in its headline and lead paragraph was a march by Bureau of Corrections officers to the Governor's office following the incident "to protest the presence of an unnamed Fort Christian prisoner." Defendants' Exhibit A. at 1. The article went on to say:

> Although no names were mentioned the Correction officers implied that they were protesting the presence of Ishmael Ali, also known as Ishmael La Beet.

Id. In addition, the article reported that according to a guard on the scene, a scuffle between Corrections officers and two inmates had broken out the prior day and that "one of the unwilling [inmate] transferees jumped the guard . . . ." Id. at 2. The article then stated:

> When that [scuffle] occurred, Ali [is] reported to have held the guard, according to the Corrections officer.

131

By his amended complaint plaintiff alleges that the passages in the November 3, 1979, news story reporting that he had "held" a Corrections officer and that he had otherwise been involved in the disturbances at Fort Christian described in the story were false and defamatory, and that his reputation was injured thereby.

## II. *Discussion*

■ ■ The starting point for disposing of a defamation claim upon a Rule 56 motion is inquiry into whether or not plaintiff is "public figure" within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254 (1964) and its progeny. Those cases established the proposition that once a libel plaintiff is determined as a matter of law to be a "public figure", the First Amendment's guarantees of freedom of speech and of the press preclude recovery unless the plaintiff proves that defendant published a falsehood with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra, at 280. See, also, Restatement (Second) of Torts § 580 A (1977). Should plaintiff be deemed a "private figure", the strictures of the First Amendment are not as rigidly imposed and his burden is therefore substantially lessened insofar as he need only establish that defendant was negligent "in failing to ascertain" whether or not the published statements were false and defamatory. Restatement, supra § 580 B.

■ Because "the level of clear and convincing proof required . . . to show 'actual malice' is almost insuperable." Reliance Insurance Co. v. Barron's, 442 F.Supp. 1341, 1344 (S.D.N.Y. 1977), it is obvious that the legal question of public figure status is vital to plaintiff's claim and should therefore "be answered as soon as possible." Miller v. Transamerican Press, Inc., 621 F.2d 721, 724 (5th Cir.), cert. denied, 450 U.S. 1041 (1980). If this essential component of plaintiff's claim "cannot be proved at trial, for want of evidence, it is appropriate to grant [defendants'] motion" for summary judgment. Reliance Insurance Co. v. Barron's, supra at 1343. See, also, Rebozo v. Washington Post Co., 637 F.2d 375, 379 (5th Cir. 1981); Ratner v. Young, 465 F.Supp. 386 (D.V.I. 1979). After carefully considering the submitted affidavits and defendants' memorandum of law in a light most favorable to this pro se plaintiff, we conclude for the reasons set forth below that plaintiff could not possibly meet the "insuperable" burden of proof which is required in this case and that defendants are entitled therefore to a grant of summary judgment.

The issues of public figure status and the applicable measure of fault will be discussed separately.

(A) *Public or Private Figure Status*

 The Sullivan rule was originally limited to public officials. Subsequently, the U.S. Supreme Court extended the rule to those libel plaintiffs outside of government service but nevertheless in the public eye. Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967). The notion that a public figure libel plaintiff should be required to bear a greater burden of proof ("actual malice") than that imposed upon a private figure libel plaintiff (mere negligence) rests upon a twofold premise; one, that public figures are less vulnerable to injury to reputation because they will have more effective opportunities than private individuals to "counter criticism and expose the falsehood and fallacies of defamatory statements," Wolston v. Reader's Digest Association, Inc., 443 U.S. 157, 164 (1979) and two, that unlike anonymous individuals, public figures "have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974).

 A correct characterization of a libel plaintiff as either a private or public figure is further complicated by the distinction, first recognized in Gertz, supra, between an "all purpose" and a "limited purpose public figure". The first category contains those persons who "occupy positions of such persuasive power and influence that they are deemed public figures" with respect to published comments about *all* aspects of their lives, Gertz, supra at 345, while the second category contains those who have "thrust themselves to the forefront of particular controversies in order to influence the resolution of the issues involved" and who are therefore deemed public figures for the limited purpose of comment on their involvement with the "public controversy." Id. See, also, Ratner v. Young, supra, at 400.

"Defining public figures is much like trying to nail a jelly fish to the wall." Rosanova v. Playboy Enterprises, 411 F.Supp. 440, 443 (S.D. Ga. 1976), aff'd 580 F.2d 859 (5th Cir. 1978). Defining the particular "public controversy" to which statements about a "limited purpose public figure" are to be circumscribed is an even more exasperating exercise. In the present case, however, we are persuaded that plaintiff clearly meets the definition of a limited purpose public figure as set forth above. Without deciding whether or not he fits within that category of individuals deemed to be "public figures" for purposes of *any* published commentary, we conclude

that plaintiff was a public figure at least for purposes of published statements pertaining to his incarceration in Fort Christian and the more general topic of prison conditions in the Virgin Islands in 1979.

■ The submitted exhibits indicate that Ali voluntarily and (within the limits of his inmate status) aggressively entered into the intense public controversy surrounding the presence of particular inmates in the Virgin Islands as well as the administration of the Territory's correctional facilities. In July 1979 members of the Virgin Islands Legislature's Public Safety Committee visited Fort Christian as part of an investigation into grievances recently voiced by both inmates and Corrections officers. Ali, as spokesman for the inmates, sought to draw both legislative and public attention to conditions at Fort Christian. Affidavit of Ariel Melchoir, Jr., at 7. In October 1979—three weeks before the challenged news story was published—a subcommittee of the Legislature conducted another tour of Fort Christian, and once again plaintiff came forward as a spokesman for the inmates. Identifying himself as president of a group called the Prisoners' Committee, Ali read a petition to the Legislators, Legislative staff members and several accompanying journalists which set forth various inmate grievances relating to sanitation, food, visiting hours, library facilities and work assignments at Fort Christian. Affidavit of Cathleen Cogswell.

■ Defendants point out that plaintiff has been a "newsworthy" individual ever since he was arrested and charged in September 1972 for participation in the so-called Fountain Valley murders. His widely publicized conduct during the subsequent trial, the protracted series of appeals and his effort to be transferred from custody in the mainland have combined to make Ali the subject of pervasive public commentary and press attention for almost ten years. It is important to bear in mind, however, that not every person who engages in criminal conduct and is thereafter subject to the glare of publicity attendant upon a sensational series of court hearings "automatically" becomes a "public figure" even "for purposes of comment on a limited range of issues relating to his conviction." Wolston v. Reader's Digest Association, supra at 168 (libel plaintiff who had refused to comply with a grand jury subpoena and subsequently charged with contempt not a public figure). Moreover, the fact that a libel plaintiff has been the focus of repeated coverage in published news accounts is not conclusive evidence of public figure status; "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." Hutchinson v. Proxmire, 443 U.S. 111, 135 (1979).

134

■ In the present case, however, plaintiff fits both the descriptive and normative criteria for public figure status articulated in Gertz. Despite his confinement in both Virgin Islands and mainland prisons, Ali's views have been afforded repeated coverage by the local news media. The substance of an interview with plaintiff, for example, was published by the defendant Daily News on July 7, 1978, to accompany a news account of a court hearing on his petition to be transferred from the mainland. Of more importance to the present action is a news article published by the Daily News on July 30, 1979, under the headline "Prisoner La Beet the Boss? He says that's 'Impossible'". This article gave an account of an interview conducted at Ali's request, which thereby afforded him a public forum in which to refute recent public allegations (appearing in both news stories and in published letters to the editor) that he was "in control" of other inmates at Fort Christian.[1] Affidavit of Patricia Blake at 6. With respect to the normative aspect of the Gertz test, it is plain that Ali "assumed the risk of potentially unfair criticism [and news coverage] by entering the public arena and engaging the public's attention." Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264, 273 (3rd Cir. 1980). His request for an interview with defendant Blake, his two public appearances during the Legislature's investigation of Fort Christian as well as several letters which he sought to have published in both of the Virgin Islands' two daily newspapers, each indicate that Ali has repeatedly and voluntarily sought to "arouse public sentiment in his favor" with respect to both his incarceration and the general state of affairs in the Virgin Islands correctional system. Wolston v. Reader's Digest Association, Inc., supra at 168. Although we reiterate that not every litigant in a judicial proceeding or every convict may be properly deemed a "public figure", for purposes of a defamation claim, we agree with the Sixth Circuit Court of Appeals which has stated:

> [I]t appears . . . that a criminal defendant would be classified as a 'public figure' where . . . the press has publicized his conduct in part as the result of his own efforts to obtain publicity . . . .

Orr v. Argus-Press Co., 586 F.2d 1108, 1116 (6th Cir.), cert. denied, 440 U.S. 960 (1978).

Because plaintiff has been afforded continuing access to the local news media, he has thereby been able to protect his reputation from

---

[1] Ironically it was this type of coverage which provoked the ire of many readers of the Daily News, one of whom criticized the editor for affording Ali "a curious prominence in the pages of your paper." Letter to the editor, Daily News, August 8, 1979, attached to Melchoir affidavit.

whatever injury it may have suffered from published comments. Because plaintiff has in a figurative sense "mount[ed] a rostrum," Wolston, supra at 169 (Blackman, J., concurring) in an effort to draw public attention to prison conditions in the Virgin Islands as well as to himself, he has thereby surrendered his interest in an unsullied reputation insofar as his participation in that effort is concerned. Having found that the indicia of limited purpose public figure status are present in this case, plaintiff, in order to prevail on his claim, must prove that in publishing the November 3, 1979, article defendants acted with actual malice.

(B) *The Measure of Fault: "Actual Malice"*

 While the term "actual malice" (like the term "public figure") eludes precise definition, it applies where libel defendants publish statements either with actual knowledge of the falsity of the statements or with utter disregard for whether the statements are true or false. In practical terms this means that a public figure libel plaintiff must proffer some evidence that in publishing false statements news media defendants entertained doubts as to the veracity of the publication, or failed to investigate and verify facts or that they departed from standard journalist practices or that in general their news gathering and editorial techinques were "so lax and slipshod . . . as to constitute evidence on which to base a finding of actual malice" toward the plaintiff. Reliance Insurance Co. v. Barron's, supra at 1351.

The Supreme Court has noted that this determination "calls into question" a defendant's state of mind and therefore "does not readily lend itself to summary disposition." Hutchinson v. Proxmire, supra at 120 n.9. See, also, Herbert v. Lando, 445 U.S. 153 (1979). In the present case, however, there is no basis upon which the trier could possibly find that any of the defendants acted with actual malice. The plaintiff alleges in essence that two aspects of the November 3, 1979, article were false and defamatory; the statement that the Corrections officers' protest was sparked by his presence in Fort Christian and the statement that he had "held" an officer and was otherwise involved in the disturbances on November 2. The affidavit of defendant Blake indicates that she thoroughly checked into the reasons for the officers' march; she was told by Corrections officers who had participated in the protest that they were protesting the presence of Ali in Fort Christian. Although not all the guards to whom she spoke would identify Ali as the inmate to whose presence they objected, Blake states that "when I asked whether they were refer-

136

ring to Ishmail Ali, they did not disagree. One guard said that she was not afraid to name him and said that it was Ali." Blake Affidavit at 2.

With respect to the charges that Ali "held" a corrections officer during the November 2 disturbance, defendants produce a sworn affidavit of the officer in question. This corrections officer not only confirms that he was "held" by Ali when a scuffle broke out during the transfer of the four inmates, he further states that he told defendant Blake of the incident during the course of an interview for her November 3 article. Affidavit of Michael Rhymer at 1. It is the latter statement which is crucial for the purposes of the present motion inasmuch as it supports a finding that defendant Blake did not act recklessly in attempting to determine what had transpired at Fort Christian on November 2, 1979. In addition to speaking with Officer Rhymer, Blake also spoke with the Director of the Bureau of Corrections in an effort to discover the reasons for the disturbance and the officers' protest.[2]

██ ██ Taken as a whole, the submitted affidavits indicate a complete lack of bad faith, recklessness or even negligence on the part of defendants. Defendant Blake sought to corroborate the allegations made against plaintiff from several different eyewitnesses to both the prison disturbance and the officers' protest march. She sought to verify the accuracy of charges made against plaintiff with the appropriate government officials. In short, the actions of Blake (and the editors to whom she reported) cannot support a finding that defendants ever doubted or questioned the veracity of the statements concerning plaintiff. See Steaks Unlimited, Inc. v. Deaner, supra at 276. A reasonable, diligent and good faith effort to ascertain the truth of charges made against a public figure, even if it results in the publication of some inaccuracies, must under the rule of New York Times Co. v. Sullivan, preclude a finding of "actual malice" and hence liability, inasmuch as neither knowing falsity nor reckless disregard for the truth are present.

Because there is no genuine issue of fact on the question of whether any of the defendants had any serious doubts about the accuracy of the November 3, 1979 article or otherwise acted reck-

---

[2] An incident report prepared by the then acting Chief Corrections Supervisor Jenaro Merle, but not issued until after Blake's article was filed, confirmed that Ali was involved in a melee with Officer Rhymer and two other guards, and that his actions did contribute to the inmates' protest. Affidavit of Michael Rhymer, Exhibit C.

lessly in determining the truth of statements made about plaintiff, the motion of defendants for summary judgment will be granted.

Let Judgment enter accordingly.