MARIE ROSS, Appellant/Defendant

v.

MICHAEL BRICKER, D.D.S., Appellee/Plaintiff

Terr. Ct. No. 82/801

Dist. Ct. No. 88/55

District Court of the Virgin Islands

Appellate Division, St. Croix

June 17, 1991

BRIAN L. MASONY, ESQ., St. Croix, V.I., *attorney for appellant*

EDWARD HASKINS JACOBS, (JACOBS & BRADY), St. Croix, V.I., *attorney for appellee*

BROTMAN, *Acting Chief Judge, Sitting by Designation*

On Appeal from the
Territorial Court of the Virgin Islands

Argued: April 12, 1991

BEFORE: STANLEY S. BROTMAN, *Acting Chief Judge*, District Court of the Virgin Islands, Judge of the United States District Court for the District of New Jersey Sitting by Designation; FRANK A. KAUFMAN, *Judge* of the United States District Court for the District of Maryland, Sitting by Designation; and ISHMAEL MEYERS, *Judge* of the Territorial Court of the United States, St. Croix, Virgin Islands.

## OPINION OF THE COURT

This is an appeal from a bench trial verdict awarding plaintiff Dr. Bricker $4,000 in compensatory damages plus costs for slanderous statements made by defendant Marie Ross. The trial judge orally issued her findings of fact and conclusions of law from the bench on April 4, 1984. For reasons explained below, the appeal was not officially docketed until sometime in 1988.

Defendant Ross appeals on the following grounds:

1. The findings of fact made by the lower court do not support the judgment entered and do not comply with Rule 52(a), Fed.R.Civ.Pro.

2. The court's finding of negligence is not sufficient to support an award of damages where there is no proof of actual harm to reputation.

3. The award of damages of $4,000 is not supported by the evidence.

For the following reasons, this court concludes that the trial court did not commit error on any of these grounds and the decision below will be affirmed.

## I. FACTS AND PROCEDURE

Appellant Ross is the wife and dental assistant of Dr. Gilbert Ross, a dentist who maintains an office in the same building as appellee Dr. Bricker, also a dentist. On or about August 30, 1982, Mrs. Ross received a phone call from Hector Maldonado, a patient of Dr. Ross' who was calling to request insurance papers he thought he left from a visit he made the prior week. Mrs. Ross explained that she did not have his papers and, when Mr. Maldonado described the dentist he had seen the prior week, she realized that he had mistakenly gone to Dr. Bricker's office instead. On that occasion, Mr. Maldonado had entered Dr. Bricker's office, told the receptionist he had an appointment at 7:00 p.m. and, finding no entry in the appointment book, Dr. Bricker treated him like a routine walk-in patient. Although Mr. Maldonado does not recall how he was referred to Dr. Bricker's office, testimony revealed that the building receptionist directed him there; in addition, Dr. Bricker's office door has his name on it and Mr. Maldonado passed through that door twice before treatment.

After completing her phone call with Mr. Maldonado, Mrs. Ross entered Dr. Bricker's office, approached Mrs. Mangin, his reception-

ist, and demanded Mr. Maldonado's insurance papers and x-rays. The receptionist went to get Mrs. Bricker, who worked with her husband as a dental assistant and was attending to a patient at the time. Mrs. Bricker relayed the message to Dr. Bricker, who told her to return to the patient and let him talk to Mrs. Ross directly because Mrs. Mangin "was visibl[y] shaken. And, she was just totally upset by the whole situation." Appendix at 112.

Dr. Bricker went to the reception window and asked Mrs. Ross if he could help her. She told him she had come to get Mr. Maldonado's x-rays, to which Dr. Bricker replied that they had been sent to the insurance company. App. at 112. Mrs. Ross became angry and upset and started yelling in a loud voice that Mr. Maldonado was not Dr. Bricker's patient. She shouted: "Are you so hard up you have to steal our patients?" or words to that effect. Dr. Bricker says he was too perplexed to respond. Mrs. Ross then yelled: "Your unprofessionalism is getting around this island. And it's a very small island," or words to that effect. She then left, slamming the door behind her. There is no dispute among the parties that Mrs. Ross made these statements.

Mrs. Vincent, the patient who was present but unseen by Mrs. Ross at the time, testified that Mrs. Ross was "very angry" and was "yelling and screaming at Dr. Bricker." App. at 32. She remembers the statements made by Mrs. Ross and was "very embarrassed to be there" and "very shaken." App. at 34–35. She testified that she broke her next three appointments with Dr. Bricker because "I was embarrassed that I had been there, and that I had heard those things about him, and I just actually didn't want to be around him for a while." She eventually returned to Dr. Bricker. App. at 35.

Dr. Bricker testified that he suffered humiliation, shame, emotional distress and some sleepless nights because of the incident. App. at 115. He described stealing patients as "one of the lowest things that anybody can do, and we don't do things like that." App. at 115. He admitted prior to trial that he suffered no pecuniary or economic damage as a result of the incident. App. at 13–14.

At the close of plaintiff's case, defendant moved to dismiss, which the trial judge denied on grounds that plaintiff had made out a prima facie case of slander per se. At the end of closing arguments, the trial judge remarked that "[i]f the attorneys wish to make any findings of fact they may do so to the court." App. at 189. The trial judge then delivered findings of fact and conclusions of law from the bench. The

court found the evidence proved that Mrs. Ross' statements were defamatory in that they tended to injure Dr. Bricker in his profession, there was publication to third parties, Dr. Bricker suffered actual harm and Mrs. Ross acted "unreasonably" under the circumstances. She awarded plaintiff $4,000 in compensatory damages and $1,590 in costs and fees.

On April 13, 1984, defendant filed a motion for entry of findings of fact and conclusions of law, pursuant to Rule 52(b), Fed.R.Civ.Pro., which plaintiff opposed. On May 1, 1984, defendant filed a notice of appeal and on May 3, 1984 an appeal bond was set in the amount of $500. The Territorial Court file was forwarded to the District Court even though the defendant had failed to deposit the appeal bond. On July 24, 1984, counsel for plaintiff moved to dismiss the appeal, which the court granted on October 4, 1984 for failure of the defendant to comply with its orders to pay bond.

The parties then appeared several times before the Territorial Court between July, 1984 and November, 1986. On November 7, 1986, defendant renewed her request for detailed findings of fact, which the trial judge denied in a written memorandum dated January 27, 1988. Judge Petersen wrote that the Territorial Court considered the original Rule 52(b) motion as constructively withdrawn by the notice of appeal and that the defendant had since waived her request by failing to renew it for two years. App. at 24–28. The appellant appeals from this final order and the April 4, 1984 judgment.

## II. DISCUSSION

A. *Standard of Review:*

Under Rule 52(a), "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." See 4 V.I.C. § 33. This court's review of the interpretation and application of legal precepts is plenary. United States v. Adams, 759 F.2d 1099 (3d Cir. 1985).

The first grounds for appeal concern the adequacy of findings of fact made orally by the court. Appellant argues that rendering an opinion in which the findings are inadequate and incomplete is reversible error. Specifically, appellant contends that the court's oral opinion is inadequate for failure to rule explicitly on three affirmative defenses—privilege, opinion and truth—as well as on the elements of publication and damages. Appellant's Brief at 4–7.

■ As this court recently discussed in Galiber v. Bryan, Civ. No. 89-334 (D.V.I. Oct. 9, 1990), slip op. at 4,

> Insufficiency of findings of fact . . . is not enough by itself to vacate the lower court's judgment. If the record sufficiently informs the appellate court of the basis of decision of the material issues, then it is appropriate for it to determine the merits of the appeal without remanding for more specific findings. Wright & Miller, 9 Federal Practice and Procedure § 2577; La Salle Extension University v. F.T.C., 627 F.2d 481 (D.C.Cir. 1980); Ramirez v. Hofheinz, 619 F.2d 442 (5th Cir. 1980); Hooper's Estate v. Government of the Virgin Islands, 427 F.2d 45 (3d Cir. 1970).

Therefore, we will review the record at trial to examine whether there was a sufficient basis for the trial court to find that plaintiff carried his burden to prove the elements of slander and that defendant's affirmative defenses were inadequate.

B. *Elements of Slander Per Se:*

By virtue of 1 V.I.C. § 4, the A.L.I. Restatements are the rules of decisions in the Virgin Islands absent local law to the contrary. The Restatement (Second) of Torts (herein Restatement) § 558 sets forth the following elements of defamation:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

See Cohen v. Readler, 17 V.I. 46, 54 (Terr. Ct. St. Croix 1980).

The Restatement imputes liability for slander per se to

> [o]ne who publishes matter defamatory to another in such a manner as to make the publication a slander . . . although no special harm results if the publication imputes to the other . . . (c) matter incompatible with his business, trade, profession, or office, as stated in § 573. . . .

Restatement § 570. Section 573 states:

> One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or pro-

fession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.

Restatement § 573. A disparaging remark tending to harm someone in his business or profession fits within the definition of slander per se. Restatement § 573, comment c. Furthermore, a plaintiff so injured does not need to prove special harm to recover.

■ The trial court was correct in treating the statements made by Mrs. Ross as slander per se in that they directly called into question Dr. Bricker's "professionalism" and his conduct in obtaining patients. The trial court then applied a standard of reasonableness under the circumstances and found that Mrs. Ross did not act reasonably under the circumstances. App. at 192.

■ The Supreme Court in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), held that when a private figure is the plaintiff, the First Amendment requires a finding of at least negligence. Id. at 347. Negligence, as applied in the context of a private figure, is defined by the Restatement as "conduct that creates an unreasonable risk of harm. . . . The standard of conduct is that of a reasonable person under like circumstances." Restatement of Torts § 580B, comment g, citing §§ 282, 283. The trial court specifically found that Mrs. Ross did not act reasonably under the circumstances and our review of the record finds adequate support for that conclusion. The trial court referred to the correct standard of liability for a private figure case and applied it to the facts without error.

Although neither party has raised the issue and it is not essential to our decision,[1] the court takes this opportunity to note that the facts present here put the case within the category of private person/ not matter of public concern created by the Supreme Court in Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 105 S.Ct. 2939 (1985).[2]

---

[1] Regardless of whether a strict liability or negligence standard is imposed, on these facts, plaintiff would remain the victor.

[2] The plurality decision was composed of an opinion written by Justice Powell and joined by Justice Rehnquist and Justice O'Connor; Chief Justice Burger and Justice White wrote separate concurring opinions; and the dissenting opinion was written by Justice Brennan and joined by Justice Marshall, Justice Blackman and Justice Stevens. The splintered decision resulted in the addition of a new category—the public or private content of the statement—to the other categories a court must consider in determining First Amendment protection. However, the plurality opinion itself limited its ruling to the standard of fault

That case left open the question whether strict liability was the proper standard in cases of private figures not involving issues of public concern.[3] As a leading commentator framed the question, "[m]ay a state impose common law strict liability standards in cases involving private figure plaintiffs and defamatory speech not involving matters of public concern, or does the Gertz prohibition on liability without fault continue to apply to all private figure cases?" R. Smolla, Law of Defamation, § 3.02[3] at 3–12.

In effect, the Supreme Court in Dun & Bradstreet left it to each state and territory to choose whether to adopt strict liability or negligence in cases involving a private figure and speech not a matter of public concern. In private figure cases under the common law pre-Gertz, the Restatement notes that strict liability did not play an important role. "Even if the constitutional restriction [against strict liability] should be held not to be imposed on actions for private slander, however, the common law of the states is almost certain to apply the same standard. . . . There is little reason to conclude that the states would now be disposed to take the traditional strict liability approach for libel actions . . . and apply it to slander actions against private individuals, where it has not previously been significant." Restatement § 580B, comment e.

Before the Supreme Court's decision in Dun & Bradstreet, courts in the Virgin Islands followed the Gertz holding that liability could not be found without at least some fault. See McDowell v. Paie-

---

necessary for an award of presumed or punitive damages, holding that something less than the actual malice standard of New York Times Co. v. Sullivan, 376 U.S. 254 (1964), was proper. Commentators have criticized the decision as "further confound[ing] an already complex area of the law," Note, 35 CATH. U.L. REV. 883, 891 (1986); the constitutional defamation standard ending with Dun & Bradstreet is "confusing," "misguided" and does not protect a person's reputational interest or the interests of the first amendment," Comment, American Defamation law, 48 OHIO ST. L.J. 513, 514 (1987).

[3] Justice Powell's concurring opinion set forth the following opaque test for speech involving a matter of public concern: "'[it] must be determined by [the expression's] content, form, and context . . . as revealed by the whole record.'" Dun & Bradstreet, 105 S.Ct. at 2946, quoting Connick v. Myers, 461 U.S. 138, 147–48 (1983). The five-member majority found that a credit report made available to five subscribers containing false statements about the plaintiff's solvency was not a matter of public concern. Id. at 2946–47. There can be little doubt that the statements uttered in this case—accusations by a competitor that a dentist is stealing patients and acting unprofessionally voiced in that dentist's office to a very small group of people—do not fall within the Supreme Court's understanding of speech of public concern.

wonsky, 1982 St.T. Supp. _____ (D.V.I. 1982) (trial court applied negligence standard to private figure plaintiff), rev'd on other gds., 769 F.2d 942, 951 (3d Cir. 1985); Ali v. Daily News Pub. Co., Inc., 540 F.Supp. 142, 144 (D.V.I. 1982) (a private figure plaintiff need only establish negligence) (dicta); Carino v. Golden, 19 V.I. 371, 375 (Terr.Ct. St.Croix 1983) (same); Cohen v. Raedler, 17 V.I. 46, 64–65 (Terr.Ct. St.Croix 1980) (applying negligence standard to private figure plaintiff).

In cases in this territory post-Dun & Bradstreet, our research indicates that courts in this jurisdiction have not squarely considered the issue. Of some guidance, however, is the case of Samad v. Drakes Publishers, Inc., 1987 St.T.Supp. _____ (D.V.I. March 2, 1987), aff'd 845 F.2d 1010 (3d Cir. 1987), although it concerned the award of presumed and punitive damages. Chief Judge Christian ruled that since the Restatement had not yet been modified to reflect Dun & Bradstreet, the Virgin Islands is left with the Gertz requirement of fault amounting at least to malice for the award of presumed or punitive damages. The court also noted that Dun & Bradstreet did not alter the Gertz holding allowing states to choose the appropriate standard of culpability in a private figure plaintiff defamation action, so long as they do not impose a standard of strict liability. Samad at 17.

Until the Supreme Court clarifies whether strict liability is a permissible standard in defamation cases and the Restatement provides further guidance on this issue, courts in this jurisdiction should continue to follow the rule allowing the application of a negligence standard to all private figure defamation cases.

C. *Affirmative Defense of Privilege:*

Appellant claims that the trial court committed reversible error by failing to rule on her defense of privilege. It is clear from the transcript that the trial court knew that Mrs. Ross was asserting the defense of privilege because it granted her motion to amend the answer to plead such a defense at the beginning of trial. App. at 30. A defendant has the burden of proving privilege. Restatement § 613(2).

■■ Mrs. Ross claims a conditional privilege arising from an occasion. Restatement § 594 states:

An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the publisher, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

"Even though the publication is privileged, a particular person cannot avail h[er]self of the privilege if [s]he abuses it." Restatement § 594, comment a. Comment b states that

[i]f a proper adjustment of the conflicting interests of the parties indicates that a publisher should be held liable for *failure to use due care* to determine the truth of the communication before publishing it, a conditional privilege is not needed and should not now be held to apply. The conditional privilege should be confined to a situation where the court feels that it is appropriate to hold the publisher liable only in case he knew of the falsity or acted in reckless disregard of it.

Consequently, when a negligence or "lack of due care" standard applies to liability, a defendant loses the defense of conditional privilege. The trial court, therefore, did not commit error by failing to rule explicitly on appellant's defense of privilege.[4]

D. *Affirmative Defense of Opinion:*

Mrs. Ross claims that both statements were matters of her personal opinion and, therefore, not actionable.

■ The Restatement § 566 states that

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

The court can find no error in the trial court's treatment of Mrs. Ross' statements as being in the form of an accusation of fact, or an opinion that assumed undisclosed defamatory facts, i.e., that Dr. Bricker routinely stole patients or was engaged in other deeds of misconduct that formed the basis for an opinion about his unprofessionalism.

E. *Affirmative Defense of Truth:*

Mrs. Ross claimed at trial that the statements she made had a reasonable basis in truth because she had heard from three different

---

[4] We note, however, that were conditional privilege to apply, we could find no error since there is sufficient evidence for the trial court to find, and it did so find, that appellant acted "unreasonably." The publisher must have a "correct or reasonable belief" as to the existence of the privilege.

people of Dr. Bricker's unprofessional conduct. Thus, she argues, her statement that his unprofessionalism was getting around the island was reasonable.

■ One element of slander per se is a false statement. The plaintiff's proofs at trial demonstrated that he did not steal anyone's patients, he was not unprofessional and a reputation for unprofessionalism was not getting around the island. Defendant did not present any witnesses other than herself to rebut this testimony. In addition, by finding that the defendant was negligent in that she acted unreasonably under the circumstances, the trial court implicitly found that she failed to prove such statements were true. We can find no clear error in such a conclusion.

F. *Damages:*

There is confusion on the part of defendant's counsel as to the type of damages awarded by the court and the standard of liability necessary to support such damages.

The Supreme Court in Gertz held that "the states may not permit the recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." 418 U.S. 323, 349 (1974). The District Court of the Virgin Islands held in Maynard v. Kahlil that "even nominal damages may not be recovered in defamation per se absent proof of harm to reputation at least where, in the facts herein presented, no showing of knowledge of falsity or reckless disregard for the truth have [sic] been made." 16 V.I. at 374. Appellant claims that a finding of negligence cannot support any award of damages because to do so would impermissibly infringe on First Amendment rights. Alternatively, appellant argues that the evidence does not support an award of actual damages in the amount of $4,000.

■ The trial court found that plaintiff suffered "actual" injuries, and the order of judgment awarded him $4,000 in "compensatory damages." Actual and compensatory damages are two different terms for the same thing—damages to compensate real loss and injury. Since the court did not award nominal, presumed or punitive damages, appellant's reliance on the statements in Gertz and Maynard v. Kahlil is fruitless. The court notes that an award of actual damages on a showing of negligence strikes an appropriate balance between compensating private figure plaintiffs who can prove actual harm caused by false gossip and protecting defendants from the chill of burdensome awards of presumed or punitive damages.

324

As to the sufficiency of the evidence concerning actual injury, Dr. Bricker testified that he suffered emotional distress, shame, humiliation and embarrassment and some sleepless nights. Also, the incident temporarily affected Mrs. Vincent's respect for Dr. Bricker, to the point where she missed her next three appointments. This type of injury is compensable, according to Gertz: "[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." See Cohen v. Raedler, 17 V.I. at 65. In Cohen, the court did not have any evidence of injury to reputation and the "slight" evidence of mental suffering of one plaintiff was not related causally to the event in question. Id. at 66. Here, the evidence sufficed for some award of compensatory damages.

As to the amount of $4,000, there is no indication from the trial court as to why that amount was picked. Of course, an award for emotional distress is by its very nature inexact. See Shihadeh v. United States of America, 18 V.I. 281, 284 (D.V.I. 1981). We feel that it is within the trial court's discretion to judge the credibility of the testimony and reach what it feels is a fair and adequate number to compensate for this type of harm. An award of $4,000, although on the high end of the scale, does not strike us as an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the Territorial Court will be affirmed.

An appropriate order will be entered.

## JUDGMENT OF THE COURT

This matter is before the court on the appeal of Marie Ross from the judgment of the Territorial Court of the United States Virgin Islands; and

After careful review of the record and having considered the submissions of the parties and the arguments of counsel at the hearing held April 12, 1991; and

For the reasons set forth in the Court's opinion of this date;

IT IS on this 17th day of June, 1991 hereby

ORDERED that the judgment of the Territorial Court is AFFIRMED.