**JESUS A. GARCIA, Appellant**
**v.**
**GLENYS B. HERBERT, Appellee**

D.C. Civ. App. No. 2002/76

District Court of the Virgin Islands

Division of St. Croix

November 22, 2006

DARWIN CARR, ESQ., St. Croix, U.S.V.I., *For Appellant*.

GLENYS HERBERT, *Pro se*, St. Croix, U.S.V.I.

GOMEZ, *Chief Judge, District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and SWAN, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation*.

## MEMORANDUM OPINION

(November 22, 2006)

Appellant Jesus Garcia ("Garcia" or "appellant") appeals from a judgment in the Small Claims Division of the Superior Court in favor of the appellee, Glenys Herbert ("Herbert" or "appellee"). He presents the following issues for review:

1.    The trial court erred in dismissing his counterclaim.

2.    The trial judge erred in considering the case after initially stating on the record his intent to recuse himself.

3.    The factual findings of the court were clearly erroneous.

For the reasons offered below, we affirm the judgment of the Superior Court.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

In August 2001, the appellant entered into an oral agreement to lease residential property at No. 348 Estate Williams Delight to Herbert. Both parties acknowledge the oral agreement, and a written receipt and other

600

correspondence appear in the record evidencing the agreement.[1] Pursuant to the parties' agreement, the appellee paid the appellant $900, which a receipt indicates was for one month's rent and the security deposit for the lease. The receipt also indicates that rent would be due monthly, on the 30th or 31st of each month. However, the evidence on record also points to negotiations for the purchase of the property and to have the $900 serve as a deposit for such purchase. That evidence includes several correspondence from Garcia's attorney referring to the purchase agreement and testimony by both parties to the fact of ongoing negotiations for the purchase of the home.

After payment of the money, Garcia turned over keys to the property to Herbert. Herbert contends she never moved into the property, however, because the landlord never made repairs which were a condition of her tenancy. As evidence of an agreement to repair, Herbert submitted at trial various correspondence from both parties referring to such an agreement. Garcia said he moved to Santo Domingo and was unaware whether Herbert ever moved in; however, in his testimony he acknowledged the

---

[1]    The appellant did not raise the Statute of Frauds at trial. Nonetheless, we conclude the agreement in this instance does not violate the statute.

Contracts affecting property are subject to the Virgin Islands Statute of Frauds, which provides that, "Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority." V.I. CODE ANN. tit. 28, §§ 241, 244. Therefore, "[a] landlord-tenant relationship can be created orally if the duration of an oral lease does not exceed" one year. RESTATEMENT (SECOND) OF PROPERTY § 2.1 (1976); See 28 V.I.C. § 241.

Here, the parties acknowledge the oral agreement, and there is no assertion in any of the documents or the testimony that the parties' rental agreement was to exceed one year, to bring it within the Statute of Frauds. See *See Flight Sys., Inc. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (noting that statute of frauds is waived if the defendant "admits to the existence of a contract in pleadings or testimony").

Moreover, a written receipt evidencing the, agreement indicates that rent would become due on the 30th or 31th of each month and does not otherwise specify a term of duration. In such instance, a periodic (or month-to-month) tenancy is presumed. RESTATEMENT § 1.5 comment d ("Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year."). Accordingly, the V.I. Statute of Frauds was not violated.

existence of an agreement to make repairs, although he testified those repairs were to be made as rent was paid.

Despite that testimony, Garcia now argues he did not agree to make prior repairs and argues that Herbert agreed to do such repairs during her tenancy and charge it off the rent. In support of that argument, Garcia points to an unsigned memorandum, purportedly from Herbert, summarizing her understanding of the parties' agreement.

Attorney Darwin Carr ("Attorney Carr"), who represented Garcia in the transactions following the parties' agreement, wrote several correspondence to Herbert attempting to settle the apparent dispute over the repairs. In a letter written on September 25, 2001 and again on October 4, 2001, Attorney Carr indicated the parties had been negotiating since August regarding the repair of the home and made offers to settle the dispute, which included a four-month rent credit proposal. Attorney Carr also sent to the appellant several proposed offers to purchase, along with cover letters in which he referred to purchase negotiations and assured Herbert that if the offer was unacceptable, he would return her deposit of $900.

On October 2, 2001, Herbert wrote to Attorney Carr advising him that $4,000 in repairs was required "in order for me to move in" to the house. A repair estimate from a contractor was included with that letter.

On October 4, 2001, the appellant, through his counsel, notified Herbert that he had become aware that the locks had been changed to the property and requested copies of keys in her possession. In response, by letter dated October 5, 2002, Herbert advised Attorney Carr not to contact her further or enter the property, on threat of legal process. In that letter, she referred to herself as a tenant, although she also noted her "impending" tenancy. At trial, Herbert explained she wrote the letter in response to what she viewed as harassment by Attorney Carr.

Following Herbert's response, Attorney Carr served Herbert with notice to quit the premises within 30 days. The appellee subsequently filed a small claims complaint seeking to recoup her $900 deposit, claiming she never took actual possession of the premises because of Garcia's failure to repair.

Attorney Carr filed a counterclaim in his own name, seeking reimbursement of $393.85. Of that amount, he claimed $93.85 was incurred in replacing the locks to the property and the remainder for representing Garcia in the transactions with Herbert. Attached to the counterclaim was

the unsigned memorandum, addressed to Garcia from Herbert and purporting to memorialize an oral agreement that would have made Herbert responsible for repairs.

At the initial hearing on the matter, Garcia did not appear. However, Attorney Carr appeared on his behalf, although he referred to himself not as Garcia's legal counsel, but as his agent. At that hearing on February 5, 2002, the trial judge dismissed the appellant's counterclaim and struck it from the record, after noting that the counterclaim was brought in Attorney Carr's name. Moreover, the judge stated that because Garcia, the named defendant in the action, failed to appear, the matter would be decided on the pleadings. The court also set a new date for hearing, after it came to the court's attention that Garcia may have had no knowledge of the proceedings, because Attorney Carr served notice through a mailbox that only Attorney Carr had access to.

Although the trial judge indicated at the February hearing that he would recuse himself from the matter, he nonetheless considered the merits at a new hearing on April 23, 2002. At that hearing, Garcia appeared but did not file a counterclaim for damages, nor did he offer any evidence of damages. He testified he had offered to refund Herbert's money on several occasions, but she did not accept it because of the ongoing purchase negotiations. He acknowledged that Herbert had indicated to him that she had never occupied the house, but he lived off-island and was unaware whether she had.

Moreover, contrary to the unsigned memorandum submitted by Attorney Carr in the counterclaim, Garcia testified to an agreement to repair the premises, which he said he agreed to do little by little as Herbert paid the rent. On questioning by the court, Garcia asserted he did not believe Herbert was entitled to refund of the deposit because she had previously refused such refund and because she had held the property for two months, thereby preventing him from securing another tenant. He acknowledged, however, that during that two-month period, he was engaged in negotiations to sell the property to Herbert and was unable to provide the court with evidence that he had lost potential tenants.

At the conclusion of the hearing, the court found in favor of Herbert and awarded her a refund of $900. This timely appeal followed. Herbert has not filed an appellate brief.

603

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

We exercise appellate jurisdiction to review this appeal from a civil judgment, pursuant to The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court) and the Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[2]

We generally review findings of fact for clear error and afford plenary review to the trial court's determinations of law. *See Poleon v. Gov't. of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Government of the V.I.*, 150 F. Supp. 2d 821, 827 n.7 (D.V.I. App. Div. 2001); *Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. App. Div. 1995). On appeal, we must give due regard and deference to the credibility determinations of the trial court, which is in the best position to make such assessments.

### B. Whether the Trial Court Erred in Dismissing the Appellant's Counterclaim.

Appellant contends the trial judge erred in dismissing his counterclaim, without offering reasons on the record or findings of fact supporting such dismissal. We disagree.

In pleadings filed with the court, a party to the action is required to set forth the nature of the claim "showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a) (applicable through SUPER. CT. R. 32); SUPER. CT. R. 34. Moreover, the action must name all the *parties* to that action and shall, if brought *pro se*, be signed by the party seeking relief. *See* SUPER. CT. R. 30(a); *see also* FED. R. CIV. P. 10, 11(a) (applicable through SUPER. CT. R. 29). Although small claims actions require some liberal construction and are not held to formal procedures, the statute governing such actions similarly requires that "parties shall in all cases appear in person except for corporate parties, associations and partnerships which may appear by a personal representative." 4 V.I.C. §§ 111-112; *see also* SUPER. CT. R. 61-63 (procedures in small claims

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

division). Accordingly, no party may be represented by counsel in such actions, in furtherance of the statute's intent to provide an informal, summary, and simple procedure for seeking relief. Given these standards and the facts established on the record, the appellant's argument that the trial judge arbitrarily dismissed his counterclaim is unpersuasive.

Attorney Carr noted he was not a party to the challenged oral agreement and was not around at the time of its making. Despite the assertions in the pleading, indicating that Herbert's alleged actions and resulting injury were against Garcia, the counterclaim named as a party Attorney Carr. Moreover, Attorney Carr signed that pleading and, on questioning by the Court, acknowledged that Garcia had not seen any correspondence, although he was notified of the proceedings by phone. Attorney Carr additionally acknowledged on the record that he brought the counterclaim, not on his own behalf, but as Garcia's "agent." Finally, a substantial part of the counterclaim was for attorney's fees, which are not permissible in a small claims action.

The trial judge pointed out on the record that the counterclaim was defective, in that it named Attorney Carr, rather than Garcia, as the claimant and was signed by the attorney, and the hearing was continued until Garcia could be personally present. Garcia later appeared at a rescheduled hearing and responded to the complaint, but did not file a counterclaim on his own behalf.

■ Although the trial court did not specially enter findings on the record surrounding this dismissal, as required under FED. R. CIV. P. 52(a), its reasoning is adequately set forth on the record to permit review. *See* FED. R. CIV. P. 52 (requiring findings of fact in non-jury settings and finding oral findings sufficient to satisfy this requirement); *see also, Ross v. Bricker*, 770 F. Supp. 1038, 1042, 26 V.I. 314 (D.V.I. App. Div. 1991) (noting that, "If the record sufficiently informs the appellate court of the basis of decision of the material issues, then it is appropriate for it to determine the merits of the appeal without remanding for more specific findings.") (citations omitted). Given the clear statutory prohibition against representation by an attorney or agent in a small claims action, and the statutory mandate that such claims be brought in the name of the party who shall personally appear, the trial court did not err in

determining that Attorney Carr's counterclaim and appearance were improper.[3]

## C. Whether the Trial Judge Erred in Considering the Case After Stating on the Record His Intent to Recuse Himself.

Appellant next complains the trial judge erroneously considered the matter, despite initially stating on the record his intent to recuse himself. Because there is no indication the appellant challenged the judge's ability to hear the case or requested recusal, our scope of review is constrained to plain error. *See United States v. Vampire Nation*, 451 F.3d 189, 207-08 (3d Cir. 2006) (court's decision not to *sua sponte* recuse is reviewed for plain error) (*citing Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166, 45 V.I. 712 (3d Cir. 2004)).

Under that standard, we may reverse the trial court's determination where there was a plain error that affected the litigant's substantial rights. *Selkridge*, 360 F.3d at 167. (citing *United States v. Antar*, 53 F.3d 568, 573 (3d Cir. 1995); *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). Such error generally requires some "affirmative showing that the error [was] prejudicial. It must have affected the outcome of the district court proceedings." *Id.* (*quoting Olano*, 507 U.S. at 734) (internal quotation marks omitted). However, the *Selkridge* Court noted that, in the context of recusal challenges, prejudice may be presumed without affirmative evidence that the alleged error affected the outcome where the trial judge failed to recuse himself "despite an appearance of partiality." *Id.* The Court noted, "Because the touchstone of recusal is the integrity of the judiciary ... prejudice is presumed once the appearance of partiality is shown." *Id.* (citations omitted).

Appellant correctly points to Virgin Islands law prohibiting a judge from considering a matter in which he has a personal interest, whether as

---

[3] Even if the counterclaim were considered, the appellant would not be entitled to relief. The counterclaim requested damages totaling $393.85 for "costs in engaging his agent in preparing to evict Counter-Defendant from subject property, purchasing new locks, and engaging his agent to represent him in the instant case." Of that amount, $300 were for attorney's fees, as evidenced by the receipts attached to the counterclaim as Plaintiff's Exhibit 6. On the remaining sum, the evidence was disputed. Herbert denied changing locks or ever occupying the premises. Garcia offered no evidence at the hearing on this issue.

a party, or through relationship to a party, or as prior representative, or "When it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him." 4 V.I.C. § 284. However, he points to no evidence of partiality, and the record is devoid of any evidence of bias or personal interest in the case that would bring this case within section 284 or within the *Selkridge* presumption.

We note that although the trial judge suggested at the initial hearing that he might be inclined to recuse himself from the case, there is nothing on the record from which we can discern the reason for the trial judge's suggestion or to conclude that this evidenced partiality, as the appellant suggests. That statement could have been made for any number of reasons without suggesting partiality concerning the merits of the action, given the procedural posture of the case at the time. (For example, at the time of the judge's statement, Attorney Carr was the named counterclaimant, and the relief sought was to recover his costs as representative of Garcia. When the matter was finally considered, Attorney Carr was no longer a named party nor appeared as a witness to the action.).

On such a bare record, we cannot determine that the judge's failure to recuse himself amounted to plain error.

## D. Whether The Factual Findings of the Court Were Clearly Erroneous.

Finally, the appellant argues the trial court's findings supporting its judgment were clearly erroneous as they relate to whether the tenant never took possession of the premises because of needed repairs.

In determining whether Herbert assumed possession of the leased premises, we turn first to the Restatement (Second) of Property.[4] Under the restatements, a landlord-tenant relationship is regarded as having been formed "only if the landlord transfers the right to possession of the leased property." RESTATEMENT (SECOND) OF PROPERTY LANDLORD & TENANT § 1.2. As the comment to the Restatement notes:

> The landlord-tenant relationship will not commence until the tenant has a present right to possession ... Whether an arrangement

---

[4] The Virgin Islands Code adopts the Restatements of Law in the absence of local law to the contrary. *See* 1 V.I.C. § 4.

between two parties with respect to leased property transfers to one of them the right to possession of the property depends on the intention of the parties, as revealed by the terms of their arrangement and the circumstances. The right to possession is normally transferred if the arrangement contemplates that the transferee will assume a physical relationship to the leased property which gives him control over and the power to exclude others from the property.

*Id.* at cmt. a. However, the existence of the landlord-tenant relationship may be made conditional on the occurrence of some other event, as the following provision explains:

When a stipulated event must occur before an otherwise validly created landlord-tenant relationship is to commence, the relationship is not established until such event occurs. The event stipulated may be one that is certain to occur and the time of its occurrence may be definitely determinable, as when the event is the passage of a fixed or computable period of time. ... The event may be uncertain of occurrence, as when the event is the completion of a building.

RESTATEMENT (SECOND) OF PROPERTY § 1.8 and comment a (noting that the landlord-tenant relationship "cannot begin until the tenant has the right to possession. Prior to that time, the arrangement between the parties is not one of landlord and tenant though the agreement they have entered into may impose current obligations on one or the other.").

█ Herbert asserted in her complaint and testified at the hearing that although she agreed, sometime in August 2001, to rent Garcia's house, Garcia agreed to first bring the house "into living condition" in order for her to move in by the end of August. However, she asserted the necessary repairs were never made and she was, therefore, never able to occupy the house. Herbert also presented other evidence on the record tending to show a conditional rental agreement. She produced a letter which she wrote to Attorney Carr on October 2, 2001, in which she submitted an estimate of repairs, noting, "The cost to repair, this house is four thousand one hundred thirty-seven and fifty cents ($4,137.50) to make it [liveable] in order for me to move in." On the same day, Attorney Carr responded to that letter on behalf of Garcia, acknowledg-

608

ing that the parties "have been attempting to reach an agreement" regarding repairs "since the end of August." The letter concludes by extending an offer "with regard to renting the subject property," as follows:

> Mr. Garcia is willing to credit you the rent for the months of October, November, December and January 2002 towards making the repairs to the house. Your first months rent of Four Hundred and Fifty $450 dollars will be due on January 31, 2002 ... If these terms are acceptable to you, please sign, have notarized, and initial each page Of the rental agreement. Otherwise, please make arrangements to have the keys delivered to me so that your Nine Hundred Dollar ($900.00) deposit can be refunded in a timely manner.

[*See* Letter from Attorney Carr to Glenys Herbert dated Oct. 2, 2001] (emphasis added). Another letter two days later, again from Attorney Carr to Herbert suggesting that someone had changed the locks to the property, also noted that "apparently someone has entered the main house and turned on lights and left them on for several days. ... If you did enter the house and turn on the lights, please cease and desist from doing so immediately." [Letter dated Oct. 4, 2001]. The language of that letter, which was issued prior to the notice to vacate, also suggests Herbert was not in possession of the house at that time.

Moreover, while the appellant argues that the language of the October 5, 2001 letter to Attorney Carr from Herbert threatening Attorney Carr with legal process if he entered the property evinces clear evidence of possession, he ignores other language in the same document referring to Herbert's "impending residence" and all of the other contrary evidence at trial. Further supporting the evidence that there were ongoing negotiations regarding the conditional lease agreement was Garcia's testimony at trial that, "At the end of September when I see, you know, we are not reaching where we are suppose to be I was willing to return her money." [Tr. at 39].

Garcia also testified that, because he had relocated to Santo Domingo, he did not know whether Herbert ever moved into the home, although he acknowledged she had previously told him she had not. He also offered a different account of the agreement regarding repairs, however. In that regard, Garcia testified that Herbert had agreed to pay rent and that he

609

had agreed to make repairs as the rent was paid, since he had no up-front money to do the repairs.

Taken as a whole, this evidence supports the trial court's finding that Herbert never assumed possession of the premises and was entitled to a refund.

In the face of contrary evidence and testimony at the hearing, we also view as unpersuasive Garcia's appellate argument that a purported memorandum by Herbert on August 31, 2001 precluded the court from crediting Herbert's testimony that her tenancy was conditioned on the landlord making repairs. We note first that the memorandum was attached to the counterclaim, which was stricken from the record. Moreover, the document was not signed by either party, although it purports to express Herbert's understanding of the oral agreement. Nonetheless, Garcia did not argue at trial that there was such an agreement, nor did he attempt to offer that document into evidence. Indeed, he gave contrary testimony that he had, indeed, agreed to make repairs to the property as funds became available. Therefore, the trial court was faced with two different versions regarding whether the landlord agreed to repair the premises prior to Herbert's tenancy or after she moved in. To the extent the trial court made a credibility determination in resolving the dispute regarding the scope of the agreement to repair, we will not disturb that determination. *See e.g., Petillo v. New Jersey*, 562 F.2d 903, 907 (3d Cir. 1977); *Georges v. Gov't of the V.I.*, 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000); *see also United States v. Delerme*, 457 F.2d 156, 160, 8 V.I. 515 (3d Cir. 1972) (noting that appellate court should afford great deference to credibility determinations by the factfinder, who is uniquely positioned to view a witness' demeanor and to assess credibility).

We find equally supportable the trial court's finding that the evidence presented pointed to an agreement to purchase the property and to apply the $900 deposit toward that purchase. Attorney Carr presented offers to purchase the property to Herbert—on September 25, 2001 and October 1, 2001—in which he indicated that if no agreement was reached, "your $900 deposit will be refunded to you (provided that you return the keys to the house)." Consistent with such negotiations, Garcia testified that he offered to return Herbert's money on several occasions, through his attorney, but said she refused to accept it because she wanted to continue with the purchase of the home.

Given all of the evidence on the record, we find no grounds for reversal.

## III. CONCLUSION

For the foregoing reasons, the trial court's determination in favor of the appellee will be affirmed.