**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff/Appellee**

**v.**

**EDISON ETIENNE, Defendant/Appellant**

[810 F. Supp. 659]

Crim. No. 91-130

Crim. No. F54-1991

District Court of the Virgin Islands

Appellate Division of St. Thomas/St. John

December 4, 1992

BEFORE: STANLEY S. BROTMAN, *Senior United States District Judge* for the District of New Jersey, Sitting by Designation; ALFRED M. WOLIN, *United States District Court Judge* for the District of New Jersey, Sitting by Designation; JULIO A. BRADY, *Territorial Court Judge,* Division of St. Croix, Sitting by Designation.

DEANA M. BÖLLING, ESQ., Assistant Attorney General, (Department of Justice), St. Thomas, V.I., *for appellee*

TRESTON E. MOORE, ESQ., (GRUNERT, STOUT, MOORE & BRUCH), St. Thomas, V.I., *for appellant*

## OPINION OF THE COURT

PER CURIAM

This is an appeal from the Territorial Court's conviction of Edison Etienne ("Etienne") on one count for possession of a firearm in violation of 14 V.I.C. § 2253(a).[1]

---

[1] V.I. Code Ann. tit. 14, § 2253(a) (Equity 1991) makes it a crime to carry firearms: Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than six months nor more than three years and shall be fined not more than $5,000, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or·under the proximate control of such person during the commission or attempted commission of a

## I. BACKGROUND

The events immediately preceding Etienne's arrest on firearm possession began on Saturday, February 23, 1991 when Etienne arrived at the Windward Hotel in a rental car with two associates, Maurice Joseph ("Shadow") and Antonio Emmanuel Bryan, Jr. ("T.J."). Shadow had rented the vehicle, a white, four-door Mirage.

Saturday evening, T.J. and Shadow let a room at the Windward Hotel. Shortly thereafter, T.J. placed a twelve gauge shotgun in the trunk of the rental car.

The following evening, Etienne stayed as an overnight guest with T.J. and Shadow in the Windward Hotel. On Monday, February 25, 1991, the three men checked out of their room. As T.J. paid the bill, Etienne and Shadow packed the car. Etienne testified that he carried a brown plastic bag and black radio to the car. After loading the car, Shadow passed the car keys to Etienne and left to join T.J. at the front desk.

Agent Johnson Decembre had a different recollection of Etienne's activity. At trial, Agent Decembre testified that, on Monday morning, he and Agent Fitzroy Brann observed three men pass before their car. One of them, identified as Etienne, was carrying an unartfully concealed shotgun under his arm. Agent Decembre and Brann then observed Etienne put the shotgun into a case, which lay in the trunk of the rental vehicle. The bag carried by Etienne contained shotgun shells. Based on their observations, the agents arrested Etienne.

Shortly thereafter, officers Benjamin and Williams arrived and took possession of the weapon and shells. The weapon was not test fired or fingerprinted. Etienne was thereafter charged by government information with one count of possession of a firearm.

---

crime of violence, as defined in subsection (d) hereof, then such person shall be sentenced to imprisonment of not less than five years nor more than ten years and shall be fined not more than $10,000. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

V.I. Code Ann. tit. 23, § 451(d) (1970) defines firearm:

"Firearm" means any device by whatever name known, capable of discharging ammunition by means of gas generated from an explosive composition, including any air gas or spring gun or any "BB" pistols or "BB" guns that have been adapted or modified to discharge projectiles as a firearm.

124

Shadow was charged in a separate count of the same information for possession of a .38 revolver in violation of 14 V.I.C. § 2253(a). Based on the record before the Court, T.J. was not implicated in any wrongdoing in connection with the events that transpired at the Windward Hotel on February 25, 1991.

The same day, Territorial Court Judge Alphonso Christian set bail for appellant at $500. Etienne was arraigned on March 7, 1991. Etienne's appointed counsel filed a motion for supplemental discovery on April 15, 1991. Therein, Etienne's counsel requested fingerprint impressions from the gun and discovery of the unidentified agent. On May 1st, Etienne's counsel filed a motion to compel the Government's response. The government provided its initial response on May 30, 1991, but failed to provide the agent's name and the weapon's fingerprints. On June 24th, the Government identified the second agent as Decembre. Etienne's motion to sever defendants was granted on August 30th. The weapon was not fingerprinted until the day of trial.[2]

Etienne was tried before the Territorial Court of the Virgin Islands. At trial, the court refused to instruct the jury that Etienne could only be found guilty if he were in actual, knowing possession of the firearm at the time of this arrest. Appellant also contends that the court failed to give instruction on mens rea. Moreover, the court provided instruction on constructive possession, joint possession and aiding and abetting another's possession.[3] Etienne was subse-

---

[2] Etienne's counsel had filed a motion to compel production of evidence and exculpatory material on August 30th. In the notice of motion, counsel specifically requested "identification of any and all fingerprints lifted from one 12 gauge shotgun seized." Appellant's App. p. 19.

On September 3, 1991, the court ordered the Government to retrieve fingerprints from the weapon. Jury selection took place two days before the trial scheduled for September 5th. On the day of the trial, the Government initially informed the court that it had been unable to locate the weapon, and the Court issued an order dismissing the charges against Etienne. Shortly thereafter, the Government informed the court that the weapon had been found, and the court rescinded its earlier order. The Government also advised the court that the weapon had been test fired and fingerprinted. The latter was inconclusive because of "smudges" on the weapon.

[3] The Territorial Court provided the following jury instruction on possession:
Now, since the Government alleges that he possessed this firearm, let me define possession for you. The Law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct

quently convicted of one count of possession of a twelve-gauge shotgun in violation of 14 V.I.C. § 2253(a).

On October 23, 1991, Etienne was sentenced to six-months imprisonment. His counsel brought a motion for new trial on the basis that Joseph and Bryan wanted to waive their immunity and provide exculpatory testimony. This motion was denied.

Etienne, through his counsel, filed notice of appeal on October 9, 1991 and an amended notice of appeal on November 5th. The court stayed execution of the judgment pending disposition of Etienne's appeal. By an Order dated October 27, 1992, the Court extended nunc pro tunc for a period of thirty-days the time for the parties to serve their respective submissions.

While appellant submitted a brief in support of his application, the government failed to respond until three-days before the date of oral argument. The Court found that it would unfairly prejudice appellant and unjustly reward the government to accept the government's papers at such a late date.[4] As a result, this Court did not

---

physical control over a thing, at a given time, is then in actual possession of it. I am in actual possession of the pen because I am holding it, which is what we mean by actual possession.

A person who, although not in actual possession, knowingly has both the power and the intention at any given time, to exercise dominion or actual control over a thing, either directly or through another person, is then in constructive possession of it. Now, I know longer have the pen in my hand, but since it's so close to me, I could exercise dominion and control over the pen. Let me give you another example. You are in your automobile driving. You have actual possession of it—your automobile because you are actually in it driving. You came here this morning, you put your automobile in the parking lot, you have the keys to your automobile. So, because you have the keys to your automobile, you exercise dominion and control over your automobile even though you are not in the automobile right now. You are in constructive possession of the automobile. The Law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole; that is, if one has actual or constructive possession. If two or more persons share actual or constructive possession of a thing, possession is joint . . . .

Now, you may find that the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the Defendant had actual or constructive possession, either alone or jointly with others. App. of Appellant (Final Instruction to the Jury) at 120-21.

[4] Despite the Assistant Attorney General's failure to file a timely brief, the court permitted the Government to argue the merits of its case. The Court did this,

consider the government's submissions, and entertained oral argument on the following issue: whether the trial court erred in its charge to the jury by its instruction on constructive possession.[5]

## II. DISCUSSION

Etienne argues that the jury instructions contained multiple infirmities. Of these, his first and most persuasive argument is that the trial court improperly instructed the jury on constructive possession as an appropriate basis for the actus reus element required by 14 V.I. § 2253(a).

■■ Issues on appeal that pertain to jury instructions constitute questions of statutory construction because they require the interpretation and application of legal precepts. United States v. Grayson, 795 F.2d 278, 288 (3d Cir. 1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 927, and cert. denied, 481 U.S. 1018, 107 S.Ct. 1899 (1987); Universal Minerals Inc. v. C.A. Hughes & Co., 669 P.2d 98, 102–03 (3d Cir. 1981). The Third Circuit considers questions of statutory construction a finding of law entitled to plenary review. Ballay v. Legg Mason Wood Walker. Inc., 925 F.2d 682, 684 (3d Cir.), cert. denied, — U.S. —, 112 S.Ct. 79 (1991); Universal Minerals, 669 F.2d at 10.

---

however, with some hesitation. The Government's failure to file timely briefs is a serious problem in this jurisdiction. The Court now puts representatives of the Government on notice that their failure to obey Court deadlines and orders will not—indeed cannot—be tolerated in the future. The Government must establish thorough and efficient procedures for the receipt and filing of court papers. Clearly, the just and efficient administration of justice depends on all litigants complying with Court orders and deadlines. The Government is no exception.

[5] Etienne raised five issues in his brief submitted in support of his appeal:

1. Whether the court erred in its charge to the jury where the court included an instruction on constructive possession and failed to give an instruction on Shadow's flight at the time of Etienne's arrest.
2. Whether the post-conviction availability of two witnesses requires a new trial where said witnesses had asserted their privilege not to testify at trial.
3. Whether the Government's refusal to obtain fingerprints from the firearm prior to the day of trial deprived Etienne of exculpatory evidence.
4. Whether the Government violated Etienne's fundamental rights by proceeding to trial at a time where it was unable to locate the firearm involved.
5. Whether the court erred in its failure to swear the jury immediately after its selection.

■ In its review of a particular jury charge, the Court must "determine whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issues in the case to the jury." Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir.), cert. denied, 432 U.S. 907, 97 S.Ct. 2952 (1977).

The appellant directs the Court's attention to the portion of the trial court judge's final jury instructions that pertains to the possession element of 14 V.I.C. § 2253(a). More specifically, Etienne charges it was error for the trial court to charge constructive possession under the statute.

■ The law recognizes two types of possession, actual and constructive. Actual possession exists when "the thing [possessed] is in the immediate possession or control of the party." Rodella v. Barnes, 286 F.2d 306, 311 (9th Cir.), cert. denied, 365 U.S. 889, 81 S. Ct. 1042 (1960). Constructive possession entails a person's power and intention to "knowingly" exercise "dominion and control" of the weapon at any given time. United States v. Bonham, 477 P.2d 1137, 1138 (3d Cir. 1973); United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972). It exists "without actual personal occupation of land or without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion." Rodella, 286 P.2d at 312.[6]

The question now becomes which definition of possession does section 2253(a) incorporate. Section 2253(a) applies to a defendant who "possesses . . . either openly or concealed *on or about his person*" or "*under his control* in any vehicle." 14 V.I.C. § 2253(a) (emphasis added). It is the Government's contention that this second clause represents constructive possession language. Based on Bonham, Davis and Rodella, however, the language of the statute defines actual, not constructive possession. It can be readily contrasted with language from other statutory provisions that were designed to apply to constructive possession. For example, former-New York Penal Law § 1897(4) (1944)—now NY Penal Law § 265.05—provided a constructive possession provision: "any person

---

[6] Appellant urged at oral argument that, even if the Court finds section 2253(a) incorporates a constructive possession aspect, the trial court failed to provide that this constructive possession must be exercised knowingly. We disagree. To the extent that the trial court charged on constructive possession, it did so correctly.

. . . who shall have in his possession . . . any . . . firearm." This provision is broader than section 2253(a) because it is not qualified by possession "on or about his person" or "under his control."

■ Twenty-one U.S.C. § 844 (Supp. 1991) represents another statute that utilizes the concept of constructive possession. Section 844 states that "it shall be unlawful . . . to possess a controlled substance." This possession element also lacks the restrictive phraseology found in 14 V.I.C. § 2253(a). Judicial construction of this section has unanimously found that it incorporates both actual and constructive possession. E.g. United States v. Wilson, 657 F.2d 755 (5th Cir.), cert. denied, 455 U.S. 951, 102 S. Ct. 1456 (1981); United States v. Bonham, 477 F.2d 1137 (3d Cir. 1973) (interpreting section 844's similarly phrased predecessor section, 26 U.S.C. § 4704(a)); United States v. Holland, 445 F.2d 701 (D.C. Cir. 1971) (construing section 844's comparably worded antecedent, 21 U.S.C. § 174).

In support of his appeal, Etienne directs the court's attention to the territorial court case Government v. Elliot, 20 V.I. 44 (Terr. Ct., Div. of St. Thomas and St. John, 1983), which held that section 2253 only proscribes actual possession. While Elliot is only persuasive authority, it thoroughly examines whether section 2253(a) incorporates the concept of constructive possession. The Territorial Court in Elliot reviewed section 2253(a) and found that constructive possession does not fall within the ambit of the statute. Id. at 50. The court based its ruling on the section's historical background and the surrounding statutory scheme. Most notably, the court observed that sections 2251–53 were largely modelled after former-N.Y. Penal Law § 1897. Id. at 47. Although the New York statute contained a provision that penalized constructive possession, this provision was conspicuously absent from the Virgin Islands statutory equivalent. Id. at 48. The court found that the Virgin Island's analogue did not make constructive possession a crime, but only penalized "carrying a firearm upon one's person." Id.

The Elliot court's review of other Virgin Islands statutes that outlaw the possession of firearms reinforced its conclusion. For example, the court found that chapter 5 of Title 23 of the Virgin Islands Code prohibited constructive possession of an unlicensed firearm. Id. at 50. The legislation based its 1974 revision of 14 V.I.C. § 2253 on a section found in chapter 5 of Title 23, 23 V.I.C. § 477 (1970), but

it did not amend section 2253 to incorporate a constructive possession element.

■■ The Elliot decision provides a thorough and well-reasoned treatment of the issue currently before the Court. Clearly, as a decision by a Territorial Court, it is not binding either on this Court or the trial court; rather, Elliot is persuasive authority. Since Elliot was decided in 1983, the legislature has had nearly ten-years to amend section 2253 and abrogate Elliot. In light of the reality that the legislature of the Virgin Islands has taken no action to amend the statute to specifically criminalize constructive possession of a firearm, particularly in face of the Elliot decision, we conclude that the legislature does not authorize a conviction for constructive possession of a firearm under section 2253.

■ The dearth of other authority that interprets section 2253 provides additional reason to adopt the Elliot decision. Moreover, like Elliot, a decision that construes the statute narrowly comports with established principles of construction for penal statutes—criminal statutes should be strictly construed, and penalties should not be imposed thereunder unless the statute plainly warrants it. United States v. Compos-Serrano, 404 U.S. 293, 299, 92 S. Ct. 471, 475 (1971); United States v. Mearns, 599 F.2d 1296, 1298 (1979), cert. denied, 447 U.S. 934, 100 S. Ct. 3037 (1980).

■ There are some differences between the instant matter and Elliot, however. The facts presented here provide sufficient grounds to find actual possession. Two agents reportedly witnessed Etienne carry a firearm and place it in the trunk of a rental vehicle. While the car was rented to T.J., Etienne held the keys at the time of his arrest. In contrast, Elliot involved three weapons, one in a briefcase carried by defendant and the other two stored upon defendant's yacht. The court dismissed the two counts that pertained to the weapons found on the ship because these weapons could only be possessed constructively.

■ This Court is not faced with a motion to dismiss the information. Rather, this Court encounters an appeal charging error in the trial court's general jury instructions. While sufficient evidence exists to charge the jury on actual possession, it was error as a matter of law for the trial court to charge both constructive and actual possession.

■■■ A new trial is necessary if the error was not harmless. United States v. Dowling, 855 P.2d 114, 122 (3d Cir. 1988). When faced with errors of a constitutional magnitude, a court may only dismiss error as harmless if it can make this conclusion beyond a reasonable doubt. Grayson, 795 F.2d at 290. For other errors, such as the one currently encountered, the Court must reverse "unless [we] believe it highly probable that the error did not affect the judgment." Government v. Toto, 529 F.2d 278, 284 (3d Cir. 1976). In turn, the "high probability" standard requires that this Court have a "sure conviction that the error did not prejudice the defendant." United States v. Jannotti, 729 P.2d 213, 219–20 & n.2 (3d Cir.), cert. denied, 469 U.S. 880, 105 S.Ct. 244 (1984). In the present case, the court lacks a "sure conviction" of the type necessary to find harmless error. Both Etienne and T.J. testified that Etienne carried a black radio from the room in the Windward Hotel to the car. In addition, T.J. testified that he had placed the firearm in the car trunk on Saturday night. On the other hand, Agent Decembre testified that Etienne carried what he observed to be a firearm. Based upon this evidence, it is not possible to glean from the jury's verdict whether the jury found that appellant possessed the firearm within the meaning of section 2253(a) based on actual possession or constructive possession. Clearly, the jury's potential reliance on the constructive possession instruction would more than "marginally affect" the outcome. Dowling, 855 F.2d at 124. As a result, this Court must reverse the conviction and grant Etienne a new trial.

■■ ■■ As for the other challenges brought by appellant, the Court finds them largely without merit and rendered meaningless by today's decision. Because the trial court must charge a jury in a new trial, this Court will briefly address appellant's other challenges that pertain to the jury charge. The trial court adequately instructed on mens rea.[7] It was within the trial court's discretion to

---

[7] The territorial court provided the following instruction on intent:

[T]he prosecution must prove to your satisfaction beyond a reasonable doubt that the Defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the Law declares to be a crime even though he may not know the act is unlawful. The Defendant acts intentionally if he desires to cause the consequence of his act or if he believes that a consequence was substantially certain to result from his act . . . .
Now, the crime charged in this case is a crime which requires proof of specific

131

forego an instruction on flight. Government v. Brown, 685 F.2d 834, 837 (3d 1982). And, while there is a statutory requirement that the jury must be sworn immediately after selection, 5 V.I.C. § 3604, the authority cited by appellant reveals that this is not followed in practice. Government v. Duberry, 923 F.2d 317, 321 (3d Cir. 1991). The Third Circuit has previously reported without disapproval that two-week delays are not uncommon. Id. The two-day delay present in the instant case does not require a new trial.

## III. CONCLUSION

As a result of the foregoing, appellant's conviction is vacated and the case is remanded to the Territorial Court for further proceedings consistent herewith.

## ORDER

AND NOW, this 16th day of December, 1992, the Court having considered the written submissions of the appellant and oral argument of the parties; and

For the reasons set forth in the accompanying opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's decision is REVERSED; and

THAT appellant be granted a new trial consistent with the instructions provided in the Court's opinion.

---

intent before the Defendant can be convicted. Specific intent means more than the general intent to commit the act.

Appellant's App. (Final Instructions to the Jury) at 122–23. The Appellant's objection was that the instruction on intent was separated from the instructions on the other elements of the offense. The Court finds the instructions sufficiently clear.