**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**DANIEL SANTIAGO AND LEONICO SANTIAGO, Defendants**

**KURT WALCOTT AND EWIN HARRIS, Appellants**

**v.**

**TERRITORIAL COURT OF THE UNITED STATES VIRGIN ISLANDS, JULIO A. BRADY, JUDGE, Appellees**

D.C. Crim. App. No. 1994-0056

T.C. Crim. No. 371-1994.

District Court of the Virgin Islands
Div. of St. Croix

August 16, 1996

Rosalie Simmonds Ballentine, Esq., (Attorney General), Paul L. Gimenez, Esq., (Solicitor General), Timothy L. Faerber, Esq., (Assistant Attorney General), St. Thomas, U.S.V.I., *for Appellants*

Amelia Joseph, Esq., Christiansted, St. Croix, U.S.V.I., *for Appellee(s)*

BEFORE: MOORE, *Chief Judge*, FINCH and HOLLAR, *Judges*

## OPINION OF THE COURT

### I. INTRODUCTION

This is an appeal[1] from a final judgment of criminal contempt[2] entered by the Territorial Court of the Virgin Islands. This Court exercised plenary review in addressing the constitutional and legal issues advanced by the appellants. See *Government of the Virgin Islands v. Etienne*, 28 V.I. 121, 127, 810 F. Supp. 659, 662 (D.V.I. App. 1992); *Ross v. Bricker*, 26 V.I. 314, 318, 770 F. Supp. 1038, 1042 (D.V.I.

---

[1] This appeal was decided on the Appellants' brief, without oral argument.

[2] V.I. Code Ann. tit. 14, § 581 provides in pertinent part:
  "Every court of the Virgin Islands shall have power to punish by fines or imprisonment, at its discretion, such contempt of its authority, and none other as —

  (3) disobedience or resistance of its lawful writ, process, order, rule, decree or command."

App. 1991). For reasons which follow, the judgment(s) of criminal contempt entered by the Territorial Court of the Virgin Islands are reversed.

## II. FACTUAL AND PROCEDURAL HISTORY

On Friday, May 13, 1994, Daniel and Leonico Santiago, ("Santiago Brothers" or "Santiagos"), were arrested and charged with interfering with an officer in the discharge of his duty, disturbing the peace and resisting arrest. In lieu of Six Hundred Dollars and 00/100 ($600.00) bail, the Santiago brothers were incarcerated at the Bureau of Corrections in St. Croix. App. at 7. Upon granting the motion for release filed by Attorney Amelia Joseph, App. at 6, Judge Brady, on Saturday, May 14, 1994, telephonically instructed Police Officer Edna Encarnacion to release the Santiagos on their own recognizance. App. at 15. Because the Santiago brothers had already been transferred to Anna's Hope and were no longer in the custody of the Virgin Islands Police, Officer Encarnacion telephoned the Bureau of Corrections and notified Officer Diana Jack that Judge Brady had ordered the release of the Santiago brothers. App. at 16. Shortly after speaking with Officer Encarnacion, Judge Brady prepared a handwritten Order, addressed to the Bureau of Corrections, reducing to writing his telephone directive to release the Santiago brothers. Emad Rabieh, the Santiagos' employer, carried the handwritten Order to the Bureau of Corrections. App. at 1, 18, 28. Warden Walcott and Chief Harris reviewed the handwritten Order, App. at 35, 41 however, both Warden Walcott and Chief Harris were unfamiliar with Judge Brady's signature. Consequently, they determined that, absent authentication of the Order by means of a seal or certification from the court, they lacked authority to release the Santiago brothers. App. at 39, 46.[3] The Santiago brothers, therefore, were denied release until Monday, May 16,1994, when the Bureau of

---

[3] Although Warden Walcott spoke to Judge Brady and recognized his voice over the telephone, Walcott questioned the authenticity of the Order given the fact that one of the detainees had a previous encounter with the law, that the purported Order was handwritten on a yellow sheet of paper, and the Order was delivered by a male "Arab" and not a Marshal. Trans. pgs. 73-86.

Corrections received the typewritten, duly executed and certified court Order. App. at 11, 35, 41.

On May 16, 1994, in reaction to the delayed release, Attorney Amelia Joseph, on behalf of the Santiagos, filed a motion to show cause why certain correctional officers and officials should not be held in contempt of court. App. at 6-8. In immediate response to that motion, Judge Brady, on May 17, 1994, ordered certain named correctional officers and officials to appear before this court to show cause why they should not be held in contempt for their failure to follow the court's handwritten Order to release the Santiagos. App. 9-10. The Order to Show Cause initiated a criminal contempt proceeding against five (5) correction officers and officials,[4] including Warden Walcott and Chief Harris, which was separate and apart from the underlying prosecution of the Santiago brothers. The named correction officers and officials, as employees of the Bureau of Corrections, were represented by the Attorney General's Office. Amelia Joseph was ostensibly appointed by the Court as special private prosecutor.[5] After the hearing, only Warden Walcott and Chief Harris were found guilty of criminal contempt and each was issued a fine. On May 23, 1994, Warden Walcott and Chief Harris instituted this appeal. On August 26, 1994, the Government, on behalf of Warden Kurt Walcott and Chief Ewin Harris, filed an appellants' brief. The brief had a double caption, with one caption designating, for the first time, Judge Julio Brady and the Territorial Court of the Virgin Islands as appellees.[6] On December 2, 1994, Amelia Joseph filed a notice of intention not to file an appellees' brief.

## III. DISCUSSION

Warden Kurt Walcott and Chief Ewin Harris ("Warden Walcott and Chief Harris" or collectively "Appellants") assert that their

---

[4] *Mitchelle v. Fiore*, 470 F.2d 1149, 1153 (3rd Cir. 1972), *certiorari denied*, 93 S. Ct. 1899, 411 U.S. 938, 36 L. Ed. 2d 399 (1973) (a criminal contempt proceeding need not be initiated by an indictment. An order to show cause furnishes defendant with notice under Fed. R. Crim. P. 42(b) and this meets the requirements of due process).

[5] See Order dated November 9, 1994, by Judge Magistrate Resnick, referring to Attorney Amelia Joseph as such.

[6] A discussion as to Judge Brady's and the Territorial Court's designation is discussed in § IIID infra.

respective convictions, entered on May 19, 1994, and accompanying fines should be overturned as a result of procedural error. They argue specifically that: (a) the trial court denied appellants their Sixth and Fourteenth Amendment Rights, guaranteed under the U.S. Constitution, as made applicable to residents and constituents of the Territory of the U.S. Virgin Islands, through Section 3 of the Revised Organic Act of 1954, as amended;[7] and (b) the trial court abused its discretion by appointing an interested private counsel as special prosecutor in the criminal contempt proceedings.

In addition to the procedural challenges, appellants contend that the prosecution failed to prove beyond a reasonably doubt "wilful" disobedience of a court order. This Court will not address this issue since the matter is disposed of on grounds that: (1) the trial judge's failure to disqualify himself from presiding in the contempt proceedings; and (2) the appointment or ratification of Attorney Amelia Joseph, as a special private prosecutor, constituted reversible error.

This Court will independently address the disqualification of Judge Brady from presiding over the criminal contempt proceedings, absent consent by the correctional officials. Additionally, we are constrained to address the inappropriateness of appellants' sudden and inexplicable designation of the trial court and the trial judge as "appellees", although never raised on appeal since the special counsel, who prosecuted the criminal contempt proceeding at trial, declined to file a brief on appeal.

## A. SIXTH AND FOURTEEN AMENDMENT CHALLENGES

The appellant vehemently asserts that the manner in which the criminal contempt hearing was conducted violated their rights guaranteed to them by the Sixth and Fourteenth Amendment to the United States Constitution.[8]

In further elaborating upon their constitutional challenges, the appellants contend that their Sixth Amendment right to confront

---

[7] 48 U.S.C. § 1561.

[8] Substantive rights, including the Sixth and Fourteenth Amendments to the U.S. Constitution, are made applicable to residents and constituents of the Territory of the Virgin Islands through Section 3 of the Revised Organic Act, as amended, and codified at 48 U.S.C. § 1561.

witnesses against them was violated when the trial judge "testified" about facts and circumstances that gave rise to the charges, without subjecting himself to cross-examination.

Additionally, appellants insisted that their Fourteenth Amendment due process rights to a fair and impartial tribunal were compromised when the trial judge initiated the criminal contempt charges, prosecuted the charge and then presided over the proceedings.

■ Although the appellants may have raised constitutional issue(s), it is well settled that this Court can avoid determining constitutional questions, although properly presented by the record, if there is also present some other grounds upon which the case may be disposed. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 80 L. Ed. 688, 56 S. Ct. 466 (1936). Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the court will decide only the latter. *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 53 L. Ed. 753, 29 S. Ct. 451 (1909).

Because the inappropriateness of the contempt proceedings was decided by an application of Terr. Ct. R. 138 and 139 and/or Fed. R. Crim. P. 42 and the case law interpreting the Rules, the constitutional issues and challenges raised will not be addressed.

## B. APPOINTMENT OF PRIVATE COUNSEL AS SPECIAL PROSECUTOR

■ Although the territorial judiciary *may* designate the Attorney General or the United States Attorney to prosecute criminal contempt proceedings, it is equally authorized to designate a private attorney to do so. See Fed. R. Crim. P.42(b) and Terr. Ct. R. 139(c). While the territorial court would ordinarily seek *first* to appoint the appropriate prosecuting authority, *Young v. United States ex rel. Vuitton Et. Fils, S.A.*, 481 U.S. 787, 801, 95 L. Ed. 2d 740, 107 S. Ct. 2124 (1987), such a designation in this case would have created a conflict of interest since the Virgin Islands Department of Justice had the inherent obligation to defend the correctional

officers and officials charged with criminal contempt of court.[9] Because of the unavailability of the Virgin Islands Department of Justice to prosecute the criminal contempt action, the court was free to exercise its powers, under Terr. Ct. R. 139(c) or Fed. R. Crim. P. 42(b) to appoint private counsel to prosecute the criminal contempt action. In exercising its powers to appoint or designate private counsel, the court is required nonetheless to appoint a *"disinterested"* prosecutor. See *Young*, at 787, 808, 809-810 (1987).

Notwithstanding the limitations placed upon the court's exercise of power, the territorial court judge, by appointment or ratification, permitted Attorney Amelia Joseph to specially prosecute the contempt proceeding against the correctional officials, although:

1. Attorney Amelia Joseph was counsel for Mr. Emad Rabieh, the employer of the defendants Daniel and Leonico Santiago. App. at 6, 14.

2. Attorney Joseph was retained to represent the Santiago brothers following their arrest on May 13, 1994. App. at 6.

3. Amelia Joseph moved the court on May 14, 1994 to release the Santiago brothers on their own recognizance.

4. Attorney Joseph's motion was agreed upon during a telephone conversation she had on Saturday, May 14, 1994 with Assistant Attorney General Wallace Capel, and Judge Julio Brady.

5. Mr. Rabieh and the Santiagos, to whom Attorney Joseph represented, were the beneficiaries of the court's initial May 14, 1994 telephonic Order, its May 14, 1994 handwritten Order and its ultimate May 16, 1994 certified and sealed Order.

6. In furtherance of her clients' interest, Attorney Joseph filed a Motion to Show Cause against various correction officers and officials on Monday, May 16, 1994.

7. In response to Attorney Joseph's Motion to Show Cause, on May 17, 1994, the court issued an Order to Show Cause

---

[9] According to V.I. CODE ANN. tit. 5, § 4503(a), "[a] Bureau of Corrections is established as a division of the *Department of Justice*."

against the correction officers and officials contained in Attorney Joseph's motion. App. at 8, 10.

Under the analogous authority of *Young v. Vuitton Et. Fil*, 481 U.S. 787, 95 L. Ed. 2d 740, 107 S. Ct. 2124 (1987), the Supreme Court held that "counsel for a party that is the beneficiary of a court order *may not* be appointed to undertake criminal contempt prosecutions for alleged violations of the order". If counsel to an interested party is appointed, the doctrine of harmless error cannot be invoked because the error is so fundamental and pervasive.

■ Since Attorney Amelia Joseph was undeniably counsel for parties who were the beneficiaries of the Court Order under review, her appointment or ratification to act as special private prosecutor by the Court constituted reversible error, regardless of the facts and circumstances.

## C. DISQUALIFICATION OF JUDGE FROM PRESIDING AT CONTEMPT PROCEEDING

Terr. Ct. R. 7 states:

"The practice and procedure in the Territorial Court shall be governed by the rules of the Territorial Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence."

■ A fair reading of the Federal Rules of Criminal Procedure and the Territorial Court Rules disclose no inconsistencies regarding criminal contempt procedures. Neither Fed.R.Crim.P.42(a) nor Terr. Ct. R. 138 permits summary contempt proceedings if the contempt *was not* committed in the actual presence of the court. *U.S. v. Wilson*, 421 U.S. 309, 44 L. Ed. 2d 186, 95 S. Ct. 1802 (1975). Rule 42 does, however, permit the judge to act summarily when the contempt involves disrespect to or criticism of the judge, provided it occurs *in the judge's presence*.

■ To evoke the rule governing summary criminal contempt, the contempt must not only be committed directly under the eye or within the view of the court, but must be an open threat to the

orderly procedure of the court and a flagrant defiance of the person and presence of the judge before the public. *U.S. v. Marra*, 482 F.2d 1196 (1973); *Sacher v. U.S.*, 343 U.S. 1, 96 L. Ed. 717, 72 S. Ct. 451 (1952). Moreover, in the rare instances in which summary contempt proceedings are appropriate, the judge must prepare a certificate, asserting that he saw or heard the conduct constituting the contempt and it was committed in the actual presence of the court. The certificate, or order of contempt, must recite the facts constituting the contempt and must be signed by the judge and entered of record. 3 Wright, C.A. *Federal Practice and Procedure* § 708, p. 843 (1982).

Because the contempt in this case involves disrespect to a judge, committed *outside* his presence, the matter was prosecuted "on notice" but not in accordance with Terr. Ct. R. 139(d) and/or Fed. R. Crim. P. 42(b).[10]

Terr. Ct. R. 139(d) provides as follows:

> Except as provided in Rule 138, if the contempt charge involves disrespect to or criticism of a judge, *that judge is disqualified from presiding at the trial or hearing except with the consent of the person charged with contempt.* (Emphasis added).

Fed. R. Crim. P. 42(b) in pertinent part:

> A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. . . . *If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent.* (Emphasis added).

■ While the refusal by the correctional officers and follow the court's handwritten Order, dated May 14, 1994 constituted disrespect to Judge Brady, the act was done outside of his presence. Absent consent by the correctional officers and officials charged, permitting Judge Brady to preside over the contempt proceedings Judge Brady was required by federal and local rule to disqualify

---

[10] Notice was in the form of the Court's issuance of an Order To Show Cause upon the various correctional officers and officials.

himself from presiding over the criminal contempt proceedings. Failure to disqualify himself constituted reversible error. *Cooke v. U.S.*, 267 U.S. 517, 69 L. Ed. 767, 45 S. Ct. 390 (1925).

## D. APPROPRIATE DESIGNATION OF PARTIES TO CRIMINAL CONTEMPT HEARING AND SUBSEQUENT APPEAL

The caption presently utilized in this appeal designates Walcott and Harris as "Appellants" and the Territorial Court of the Virgin Islands and Julio A. Brady, Judge as "Appellees". At issue is the appropriate designation of the parties in this criminal contempt appeal.

■ In order to determine the appropriate parties to this appeal and the proper caption in a contempt proceeding, a distinction must be made between civil contempt and criminal contempt. The objective of civil contempt is to coerce the person to do what he is supposed to do and is thus remedial in nature. On the other hand, criminal contempt is punitive in nature with the objective of "vindicating the authority of the Court". *Carbon Fuel Co. v. United Mine Workers of America*, 517 F.2d 1348, 1349 (4th Cir. 1975) (quoting *Shillitani v. U.S.*, 384 U.S. 364, 370, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966)). Furthermore, proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 445, 55 L. Ed. 797, 31 S. Ct. 492 (1911). As a continuation of the underlying civil action, the civil contempt caption should so indicate. 3 Wright, C.A., *Federal Practice and Procedure*, § 704, p. 823 (1982).

Conversely, proceedings for criminal contempt are between the public and the persons being cited for contempt. The proceedings *are not* a part of the original case, and can arise from a criminal action or a civil action. Additionally, the criminal contempt proceedings, unlike civil contempt proceedings, are not abated by termination of the main action.

In order to "vindicate the authority of the court", an order to show cause was served upon designated correctional officers and officials. The issuance of the order to show cause established notice

of the initiation of a separate criminal action.[11] Because the criminal contempt was a separate criminal action, utilization of the caption *"Government of the Virgin Islands v. Daniel Santiago and Leonico Santiago, Crim. No. 371/1994"* to prosecute the criminal contempt charge was both misleading and erroneous. While the Government attorneys eventually corrected the caption to reflect the correctional officials as appellants, the sudden and inexplicable designation of the Territorial Court of the Virgin Islands and Judge Brady as appellees was totally unwarranted and without authority. The appellants' brief should have been entitled, *"Government of the Virgin Islands v. Warden Kurt Walcott and Chief Ewin Harris et al"* or *"In re: Warden Kurt Walcott et al."*

In emphasizing the long standing significance of having an appropriate designation of parties in a criminal contempt proceeding, the United States Supreme Court in *Gompers v. Bucks Stove & P. Co.*, 221 U.S. 418, 446, 55 L. Ed. 797, 31 S. Ct. 492 (1911) said:

> *In the first place the petition was not entitled "United States v. Samuel Gompers et al" or "In re: Samuel Gompers et al., as would have been proper, and, according to some decision, necessary, if the proceedings had been at law for criminal contempt. This is not a mere matter of form,* for manifestly every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution, whether it sought to benefit the complainant or vindicate the Court's authority. He should not be left in doubt as to whether relief or punishment was the object in view. He is not only entitled to be informed of the nature of the charge against him but to know that it is a charge, and not a suit, *United States v. Cruikshank*, 92 U.S. 542, 559, 23 L. Ed. 588, 593. (Emphasis Added.)

■ The Appellants herein impermissibly attempted to join the Territorial Court of the Virgin Islands and Judge Brady as parties to

---

[11] While the correctional officers and officials named in the Order to Show Cause were not the defendants in the underlying action, they did become the defendants in the criminal contempt proceedings.

this appeal by merely designating them as appellees, knowing that neither Judge Brady not the Territorial Court participated as litigants at the trial level. Additionally, a judge is not required to *personally* defend his/her decision when rendered in his or her judicial capacity, absent the filing of a writ of mandamus or prohibition, authorized pursuant to Fed. R. App. P. 21. No such application for writ of mandamus or writ of prohibition was made in this case.

*De Parcq v. U.S. District Court for Southern District of Iowa*, 235 F.2d 692 (8th Cir. 1956) is readily distinguishable from the case *sub judice*. The petitioner in *Deparcq* appropriately made an application pursuant to Fed.R.App. P. 21 for a writ of prohibition directed to the U.S. District Court for the Southern District of Iowa and Judge Riley to prohibit the court from holding him in contempt for failure to respond to the Order to Show Cause, thus authorizing a caption designating the court and the presiding judge as respondents or appellees.

■ Accordingly, in the absence of any application of writ of mandamus or prohibition filed in this case pursuant to Fed.R.App.P. 21, Judge Brady and the Territorial Court of the Virgin Islands must be stricken as appellees in this appeal.

## IV. CONCLUSION

Notwithstanding the fact that the appellants erroneously and impermissibly named Judge Brady and the Territorial Court as appellees without filing a writ of mandamus or prohibition pursuant to Fed.R.App.P. 21, the judgment of criminal contempt against Warden Walcott and Chief Harris must be reversed and dismissed because: (1) the trial court judge committed reversible error by appointing counsel for parties who were beneficiaries of the Order under review to prosecute the contempt proceedings, and (2) the trial judge failed to disqualify himself from presiding over the criminal proceeding, as required by Fed.R.Crim. P. 42(b) and Terr.Ct.R.139(d), where the contempt charge involved disrespect to him and where the persons being charged did not consent for him to preside over the case.

MOORE, Chief Judge, concurring in part and dissenting in part.

While I agree with the majority's holding that the Judgment Order of May 31, 1994, finding Officer Rayford Heyliger, Chief Harris and Warden Walcott in contempt of court, must be vacated,[1] I arrive at this result by a different path. I dissent, moreover, from the majority's conclusion that it is appropriate for this appellate tribunal to order the lower court to dismiss the case. The proper procedure is for the matter to be remanded for the Territorial Court to conduct further proceedings not inconsistent with this opinion.

I view the issue of the failure of the trial judge to disqualify himself from presiding over the criminal contempt proceeding involving one of his own orders as controlling, because it is the only question which was raised below and thus preserved for appeal.[2] The majority opinion, on the other hand, first addresses the issue of counsel for the Santiagos being allowed to function as a special private prosecutor, even though the appellants failed to challenge in the trial court the propriety of Attorney Joseph being allowed to prosecute the contempt.[3] The rulings on both of these issues should be clearly articulated so there is no doubt that these are alternative holdings and alternative bases for vacating these convictions.[4]

---

[1] A recitation of the facts of this case should reflect that five correctional officials were noticed in the order to show cause, namely, Director James Aiken, Warden Kurt Walcott, Officer Ewin Harris, Officer Charles Heyliger, Officer Diana Jack (Order To Show cause dated May 17, 1994, Appendix of Appellant ["App."] at 9-10), and that the Director was dismissed from the case during the course of the hearing. At the conclusion of the hearing, Officer Jack was acquitted, and Officer Rayford Heyliger, Chief Ewin Harris and Warden Kurt Walcott were found in contempt, with only Harris and Walcott being fined. (Judgment Order dated May 31, 1994).

[2] The transcript of the hearing obtained from the Territorial Court reveals that the appellants moved for Judge Brady to recuse himself because he would be a fact witness, a point which appellants did not bother to include in their brief or appendix. Hearing Transcript at 4-5. The judge took the matter under advisement and heard the evidence, stating that he felt "no need to disqualify himself for reason of bias because [he was] not enforcing any wrong done against [him] . . . [or] involving himself personally in anyway, and no personal feelings of [his] are involved at all in this matter." Id. at 6.

[3] The majority finds reversible error without any recognition of the appellate principle that we may not reverse on an issue raised for the first time on appeal without first determining that it rises to the level of plain error. E.g., Nibbs v. Roberts, 31 V.I. 196, 223 (D.V.I. App. 1995); see Prosser v. Prosser, 921 F. Supp. 1428 (D.V.I. App. 1996).

[4] According to the Supreme Court, alternative ground for a holding does not render that ground dicta or advisory. Woods v. Interstate Realty Co., 337 U.S. 535, 537, 93 L. Ed. 1524,

The facts of this case present an important issue which goes to the heart of the proper and efficient administration of justice, namely, respect for judicial authority among agencies of the Government of the Virgin Islands. If the employees of the executive do not respect the Territorial Court and its orders, we can hardly be surprised if members of the public may lose their respect for the courts of the Virgin Islands.

The majority opinion assumes without analysis that the procedure the Territorial Court judge conducted below involved a criminal[5] contempt. Before the merits can be dealt with, it is necessary in my view first to determine whether this is a civil or criminal contempt, for nothing in the court's Order To Show Cause dated May 17, 1994[6] [May 17th Order] (Appendix of Appellant ["App."] at 9-10) and nothing in the proceedings on that Order brought to our attention by appellants[7] characterizes the proceedings as either criminal or civil in nature. The Supreme Court has recently provided a roadmap for distinguishing civil from criminal contempt where a monetary fine rather than imprisonment is imposed, first outlining the well-established procedural contours of the two.

---

69 S. Ct. 1235 (1949). "Where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*" *Id.* at 537; *United States v. Title Ins. & Trust Co.,* 265 U.S. 472, 486, 68 L. Ed. 1110, 44 S. Ct. 621 (1924) ("Where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other." (citation omitted)).

[5] Although Judge Brady may have intended from the outset that this was a criminal proceeding, he did not say so until he made his ruling after hearing the evidence and argument of counsel. App. at 58.

[6] For this reason, I rely on the general contempt provisions of V.I. Code Ann. tit. 4, § 244, rather than the criminal contempt provisions contained in the criminal title of the Virgin Islands Code, *e.g.* 14 V.I.C. § 581. V.I. Code Ann. tit. 4, § 244 generally defines contempt of a court's lawful order:

Any person who wilfully violates, neglects or refuses to observe or perform any lawful order of a court shall be guilty of contempt of court and upon being found guilty of such contempt may be punished as provided by law.

*See also* 4 V.I.C. §§ 281-82.

[7] Appellants' brief was of virtually no help to us; worse, it essentially was irrelevant. We received no assistance from the other parties. Attorney Joseph declined to file a brief and the Territorial Court was invited to file an *amicus curiae* brief but failed to do so. See Order Allowing Extension of Time to File Brief and to File *Amicus Curiae* Brief, entered in this appeal by Magistrate Judge Jeffrey L. Resnick on November 9, 1994.

"Criminal contempt is a crime in the ordinary sense," and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." For "serious" criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial. In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.

*International Union, UMWA v. Bagwell*, 129 L. Ed. 2d 642, 114 S. Ct. 2552, 2556-57 (1994) (citations omitted)

In acknowledging that the distinguishing characteristics of the two forms of contempt are less clear than such procedural contours, the Court looked to an early case involving imprisonment as a sanction and drew from it the principle of examining

the "character and purpose" of the sanction involved. Thus, a contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court."

114 S. Ct. at 2557 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 55 L. Ed. 797, 31 S. Ct. 492 (1911)). Since every contempt sanction serves in some way to vindicate the authority of the court, and most sanctions serve to punish and coerce to some extent, "conclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from 'the subjective intent of a . . . court[], ' but 'from an examination of the relief itself." *Id.* (citation omitted). The Supreme Court went on to note in *Bagwell* that

[t]his dichotomy between coercive and punitive imprisonment has been extended to the [money] fine context. A contempt fine accordingly is considered civil and reme-

144

dial if it either "coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.

*Id.* at 2558 (citations omitted).

Applying these precepts to the case before us, the fact that Judge Brady proceeded by issuing a notice to the correctional officers and holding a hearing does not by itself make the proceeding one of criminal contempt. These contempt proceedings were criminal in nature because the fines were not imposed to compensate the other litigants or to coerce the prison officials to release the Santiago brothers (they had already been released).[8] Inasmuch as this appeal involves purely local issues, we need only look to Virgin Islands law on contempt of court, starting with 4 V.I.C. §§ 244, 281-82, as implemented by the appropriate Territorial Court Rules. Since the alleged contempt did not occur in Judge Brady's presence, these criminal contempt proceedings were governed by Territorial Court Rule 139:

> (a) FORM OF NOTICE, HOW GIVEN. A criminal contempt, except as provided in Rule 138[9] shall be prosecuted on notice, and if it occurs in a cause it shall be prosecuted in the cause in which it occurs. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged. The notice may

---

[8] Since no term of imprisonment was a part of the sanction and the fines imposed here do not amount to "serious criminal contempt fines," there was no requirement that the appellants be afforded a jury trial. *See, e.g., International Union, UMWA v. Bagwell*, 129 L. Ed. 2d 642, 114 S. Ct. 2552, 2562 n.5 (1994) (a contempt fine of up to $ 10,000 has been held insufficient to require a jury trial).

[9] TERR. CT. R. 138 states that

[a] criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. . . .

Thus, if this had been a contempt committed in his presence, Judge Brady would have been able to rule summarily.

be given orally by the judge in open court in the presence of the person charged with contempt, or by an order to show cause or an order of arrest.

. . .

(c) DESIGNATION OF PROSECUTOR. The court may designate as the prosecutor of the proceedings, the Attorney General of the Virgin Islands, or any other attorney of this territory.

(d) DISQUALIFICATION OF JUDGE. Except as provided in Rule 138, if the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the consent of the person charged with contempt.

TERR. CT. R. 139.[10]

One further aspect of the proceedings below relating to the proper captioning of the case needs to be addressed, namely, whether a new case should have been opened or the contempt proceedings were properly conducted within the criminal case against the Santiago brothers. Rule 139(a) states that "if [a criminal contempt] occurs in a cause it shall be prosecuted in the cause in which it occurs." This is contrary to the teaching of the Supreme Court:

Proceedings for civil contempt are between the original

---

[10] It is true that Rule 7 of the Territorial Court Rules in effect in the Spring of 1994 favored the application of the Federal Rules of Criminal Procedure over the Territorial Court's own rules: "The practice and procedure in the Territorial Court shall conform as nearly as may be to that in the district court in like causes, except where there is an express provision in the law or these rules to the contrary." TERR. CT. R. 7 (in effect before Nov. 16, 1994). Future criminal contempts will be prosecuted under the revised Rule 7, however, which requires the use of Territorial Court Rules but allows the federal rules to fill in any gaps: "The practice and procedure of the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure and Federal Rules of Criminal Procedure." TERR. CT. R. 7 (eff. Nov. 16, 1994). A comparison of FED. R. CRIM. P. 42(b) with TERR. CT. R. 139 reveals that Rule 42(b) contains the added requirement that the alleged contemnor be advised he is facing a criminal contempt, namely, that the "notice . . . shall state the essential facts constituting the *criminal* contempt charged *and describe it as such*." (emphasis added). The notice in future criminal contempt proceedings under Rule 139 should thus describe the contempt charged as a criminal contempt. Depending upon the severity of the punishment the court intends to allow, the jury trial provisions added by Rule 42(b) will also apply. The additional language in Rule 139 that the contempt "be prosecuted in the cause in which it occurs" is dealt with the text, *infra*.

parties, and are instituted and tried as a part of the main cause. But, on the other hand, *proceedings . . . for criminal contempt are between the public and the defendant, and are not a part of the original cause.*

*Gompers*, 221 U.S. at 444-45 (emphasis added). Accordingly, I would find that the portion of Rule 139(a) which requires that if a criminal contempt "occurs in a cause it shall be prosecuted in the cause in which it occurs" is in violation of the law and therefore void. Further, for the sake of clarity and certainty, and because a criminal contempt is a separate matter between the people of the Virgin Islands and the alleged contemnors, I would require such criminal contempt proceedings to be filed as a new case in the Territorial Court styled: *Government of the Virgin Islands v. [alleged contemnor]*.[11]

The majority applies the plenary review standard applicable to questions of law, constitutional and otherwise. Since the recusal vel non of a judge is the quintessential exercise of discretion, the proper standard of review for us to apply is whether Judge Brady abused his discretion in refusing to disqualify himself from hearing this contempt proceeding. *E.g., Nilva v. United States*, 352 U.S. 385, 396, 1 L. Ed. 2d 415, 77 S. Ct. 431 (1957) (The applicable standard for reviewing a trial court's decision not to disqualify himself in a criminal contempt proceeding under Rule 42(b) is an "abuse of discretion" standard; "in the absence of a showing of an abuse of . . . discretion, petitioner's conviction [on criminal contempt charges] should be sustained.").[12]

---

[11] As the case was presented to us, it carried the caption of the underlying criminal 'cause', *Government of the Virgin Islands v. Daniel Santiago and Leonico Santiago, Defendants*, clearly improper for this criminal contempt proceeding. Then a second and also improper caption, *Curt Walcott and Ewin Harris, Appellants v. Territorial Court of the United States Virgin Islands, Julio A. Brady, Judge, Appellees*, was added by the Government in its appellate brief.

[12] The standard of review for analogous provisions of the federal contempt statutes — 28 U.S.C. §§ 144, 455 — is also abuse of discretion. *See, e.g., In re Antar*, 71 F.3d 97, 101 (3d Cir. 1995); *United States v. Antar*, 53 F.3d 568, 573 (3d Cir. 1995); *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir. 1983); *Johnson v. Trueblood*, 629 F.2d 287, 290 (3d Cir. 1980), *cert. denied*, 450 U.S. 999, 68 L. Ed. 2d 200, 101 S. Ct. 1704 (1981); *Mayberry v. Maroney*, 558 F.2d 1159, 1162-63 (3d Cir. 1977); *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990),

Turning at last to the facts and issues before us, the only question presented in this appeal which was raised and preserved below is whether it was proper for Judge Brady to have presided over the contempt proceedings involving the refusal of the prison officials to honor and comply with his order. In apparent recognition that a summary proceeding was not appropriate, the judge issued an order to Director James Aiken, Warden Walcott, Chief Harris, Officer Charles Heyliger, and Officer Diana Jack, to appear and show cause why they should not be held in contempt of court for their failure to follow the court's directive to release the Santiagos as had been ordered by the court. See App. at 9-10.

Although appellants objected to Judge Brady presiding at the hearing, they apparently were unaware of the provision of Rule 139(d) that disqualifies a judge from presiding where the contempt charged involves disrespect or criticism of that judge, unless the person charged with contempt consents. There is no question in my mind that the refusal by these correctional officers to comply with Judge Brady's handwritten order constituted disrespect and criticism of the court as an institution. Whether it also amounted to disrespect or criticism of Judge Brady personally is a closer question. The judge stated on the record that no wrong was done against him personally and his personal feelings were not involved (*see supra* note 2), and his assessment must be given due consideration. On balance, I would probably conclude that the officers' actions were directed at Judge Brady personally, at least in part. Since appellants obviously did not consent to have him conduct the hearing, he was obligated by Rule 139(d) to recuse himself.

Independent of Rule 139(d), moreover, I would hold that Judge Brady was required to disqualify himself from presiding over the contempt hearing because of the necessity for him to play an active role as one of the main witnesses for the prosecution. In rendering the court's ruling, Judge Brady stated the following:

> I was contacted by Warden Walcott at some point in the afternoon — an individual whom I know and who knows me — and he simply inquired, as he testified to, whether or not

<hr>

cert. denied., 510 U.S. 841, 114 S. Ct. 126, 126 L. Ed. 2d 90 (1993); *Evenstad v. United States*, 978 F.2d 1154, 1158 (9th Cir. 1992).

this was my order, whether I had issued it and whether it was my intention that these people be released. I answered in the affirmative on all three counts, and he assured me he was calling to confirm my intent. That was the sum and substance of our conversation.

It was only later that I learned, early evening, that these individuals still had not been released. I then put in a call to the facility and spoke with someone. I believe it was Officer Heyliger, but I cannot be certain. And, in that conversation I recall I advised the officer that, to the best of my knowledge, these individuals had not been released pursuant to the order. I asked the individual if, in fact, the order was at the facility, and I was assured that it was — the order that I had sent.

I asked the individual if there is any doubt that I was Judge Brady, and I was assured there was none. Moreover, I said, "Is there any doubt that I am a judge?" I was assured there was no doubt of that either.

And then I said, "Well, I would like to advise you that if these individuals are not released there are two consequences: One, you will be holding them illegally because they have been released by my order; and two, you will then subject yourself to a possible penalty for contempt of court because that is the possibility since you have in your possession a signed order by me releasing these individuals, and they have not been released. And, I wish you to communicate this information to your supervisors so they will be aware of it as well." And that is the last contact I had with the facility until last Monday morning when Daniel Santiago and Leoncio Santiago were brought before me for advise of rights, and they were still in the custody of the Bureau of Corrections.

Hearing Transcript at 138-40. By not recusing himself, the judge precluded any cross-examination of what was in effect his 'testimony' at the hearing. Ordinary considerations of fairness and impartiality, and the appearance of impropriety, required that Judge Brady recuse himself from presiding over a matter in which the record reveals he was so personally and intimately involved. His failure to do so was an abuse of discretion. *See* 4 V.I.C. § 284(1), (4) (Disqualifications of judge).

Turning to the special private prosecutor issue addressed first in the majority opinion, I agree that ordinarily the Virgin Islands Department of Justice ["Department"] should prosecute a contempt proceeding in the Territorial Court. Here, however, the Department could not do so due to a conflict of interest on two grounds: (1) because it made the dubious decision to represent the alleged contemnors and (2) because by statute the Bureau of Corrections, by which the alleged contemnors were employed, is a division of the Department, headed by the Attorney General. See 5 V.I.C. § 4503(a). Rule 139(c) provides in such circumstances for the Territorial Court to appoint private counsel to prosecute the criminal contempt action.[13] Based on the same facts recited in the majority opinion, I would hold that it was an abuse of discretion[14] for the trial judge to allow Attorney Joseph to function as special private counsel in prosecuting the criminal contempt action against these appellants. I would further find this clear abuse of discretion to constitute plain error and an alternative ground for vacating the convictions.

An additional potential conflict of interest not present when this case was heard in May of 1994 has since developed. The judge whose order was not complied with, Julio Brady, was sworn-in as Attorney General last year and is now the supervisor of those who defied his order. While there is a question in my mind whether it was proper for attorneys of the Virgin Islands Department of Justice to defend these correctional officers against criminal contempt charges in the Territorial Court, surely there is no requirement that the Department do so.[15] Indeed, a threshold question

---

[13] Not only did the Government attorneys fail to cite to the Territorial Court Rules governing criminal contempt, but they also appear to have been totally unaware that such rules existed. Otherwise counsel would not have made the completely erroneous argument that only the Attorney General can prosecute criminal contempt before the Territorial Court. (Br. of Appellants at 27-28).

[14] Generally, whether the trial judge erred in failing to disqualify counsel is also reviewed for abuse of discretion. See, e.g., Kroungold v. Triester, 521 F.2d 763, 766 (3d Cir. 1975); International Business Machines Corp. v. Levin, 579 F.2d 271, 279 (3d Cir. 1978).

[15] There appears to be no provision in the Virgin Islands Code which authorizes the Virgin Islands Department of Justice to represent correctional officers or other government employees charged with criminal offenses, although the Attorney General is allowed to represent government employees in certain civil proceedings. See 3 V.I.C. § 114(a)(1). On at least one occasion the Government has paid for private counsel to defend a

150

should be whether refusing to obey a court order could ever fall within the scope of employment which would warrant the Government providing counsel. If the case were remanded, the Territorial Court could consider whether to exercise its authority under Rule 139(c) to appoint independent private counsel to reprosecute this contempt. If it did so, the correctional officers might have to obtain counsel just like anyone else charged in Territorial Court with a criminal offense. The vindication of the Territorial Court's authority to have its orders obeyed should not be thwarted by such a pedestrian problem of how alleged contemnors who happen to be government employees obtain counsel to defend themselves.

This brings me to the issue on which I dissent, namely, the usurpation by the majority of the Territorial Court's authority to conduct further proceedings. While we may indeed have the power to do so, I submit that it is not appropriate for this appellate court to take the extraordinary step of ordering that this case be dismissed, rather than remanding it for further proceedings. Our authority to determine appeals from the Territorial Court includes the power to "affirm, modify, vacate, set aside or reverse" the judgment appealed from and we "may remand the cause and direct the entry of such appropriate judgment, decree or order or require such further proceedings to be had as may be just under the circumstances." 4 V.I.C. § 33. Only in "special circumstances . . . dictated by considerations of sound judicial administration, in order to obviate further and entirely unnecessary proceedings below" should an appellate court take upon itself to finally dispose of the entire case. *Grosso v. United States*, 390 U.S. 62, 71-72, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968); *see Yates v. United States*, 354 U.S. 298, 331, 1 L. Ed. 2d 1356, 77 S. Ct. 1064 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) (acquittal ordered by Supreme Court because "evidence entirely too meager to justify putting [defendants] to a new trial . . . ."); *accord, United States v. Wander*, 601 F.2d 1251, 1263 (3d Cir. 1979) (case remanded to trial court for proceedings not inconsistent with opinion even though certain counts of indictment dismissed

---

correctional officer charged in the Trial Division of this Court with criminal contempt for failing to obey a written order issued. *See Government of the Virgin Islands v. Wayne Todman et al.*, District Court Crim. No. 92-116.

151

by appellate court).[16] Vacating and remanding for the Territorial Court to consider further proceedings in accordance with the guidance of this Court is the **only** proceeding that 'may be just under the circumstances'.

For these reasons, I concur with the majority's decision to vacate the lower court's Judgment Order of May 31, 1994, and I respectfully dissent from the majority's order to the Territorial Court to dismiss this case. The proper role of this Appellate Division is to vacate and remand the matter for further proceedings not inconsistent with this opinion.

## ORDER OF THE COURT

AND NOW, this 16th day of August 1996, after careful review of the record and having considered the submissions, and for the reasons set forth in the accompanying Opinion of even date;

IT IS ORDERED, that the Territorial Court's Judgment of Criminal Contempt issued against Warden Kurt Walcott and Chief Ewin Harris dated May 19, 1994 is REVERSED and REMANDED with direction to dismiss the action.

DATED: August 16, 1996

---

[16] A remand with instructions to dismiss is justified only when further proceedings would be pointless, such as when the issue is moot, *see, e.g., United States v. Munsingwear, Inc.,* 340 U.S. 36, 39-40, 95 L. Ed. 36, 71 S. Ct. 104 (1950), or the question is nonjusticiable, *see, e.g., Renne v. Geary,* 501 U.S. 312, 315, 115 L. Ed. 2d 288, 111 S. Ct. 2331 (1991); *Taylor Inv. Ltd. v. Upper Darby Tp.,* 983 F.2d 1285, 1295 (3d Cir.), *cert. denied,* 510 U.S. 914, 114 S. Ct. 304, 126 L. Ed. 2d 252 (1993), or the court does not have and never had subject matter jurisdiction, *see, e.g., National Labor Relations Bd. v. United Food and Commercial Workers Union, Local 23, AFL-CIO,* 484 U.S. 112, 133, 98 L. Ed. 2d 429, 108 S. Ct. 413 (1987), or the plaintiff fails to exhaust her administrative remedies, *see, e.g., Brown v. Fauver,* 819 F.2d 395, 397 (3d Cir. 1987). No such or similar circumstance is present in this case. If the case is remanded, another judge could be appointed, and the case readily could be retried.